862 A.2d 1037

**Tong–Ya G. MANIGAN**

v.

**John S. BURSON, Trustee et al.**

**No. 1540 Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Sept. 14, 2004.

Reconsideration Denied Dec. 30, 2004.

Tong–Ya G. Manigan, Suitland, for Appellant.

Garrett D. Green (Shapiro & Burson, on the brief), Fairfax, VA, for Appellee.

Panel: MURPHY, C.J., MARVIN H. SMITH (Retired, Specially Assigned) and LAWRENCE F. RODOWSKY (Retired, Specially Assigned), JJ.

MARVIN H. SMITH, Judge (Retired, Specially Assigned).

In this appeal, Tong-ya G. Manigan, the *pro se* appellant, challenges a writ of possession issued by the Circuit Court for Prince George's County after her home was sold at foreclosure by appellee John S. Burson, trustee for Bank of America ("the Bank"), to B.A. Mortgage, L.L.C. ("the purchaser"), a wholly owned subsidiary of the Bank.

## ISSUE

Manigan presents ten questions in her brief, which we consolidate and rephrase as one:

Did the trial court err in issuing a writ of possession to the purchaser, and in denying Manigan's motion to reconsider the issuance of that writ?

We answer the question in the negative and affirm the judgment of the trial court.

## FACTS

Bank of America held a mortgage on Manigan's town home in Prince George's County. In 1999, a dispute arose between the Bank and Manigan as to whether Manigan's mortgage payments were current. Eventually, the dispute led to the Bank's instituting foreclosure proceedings in the Circuit Court for Prince George's County. Throughout most of the proceedings, Manigan represented herself.[1]

While the foreclosure proceedings were underway, Manigan filed suit against the Bank, also in the Circuit Court for Prince George's County, for breach of contract. She alleged, in

---

1. The record reflects that at an early point in the proceedings Manigan retained an attorney who assisted her in filing for bankruptcy. Manigan indicates in her brief that she had hoped the bankruptcy would prevent the foreclosure. It is not clear when or why the attorney's representation of Manigan was terminated.

essence, that the Bank's allegations that she was behind on her mortgage payments were erroneous and were due to its own sloppy and inept accounting practices. Manigan filed a motion to stay the foreclosure proceedings until the breach of contract action was resolved, and the court granted the motion.

The trial court resolved the breach of contract action in the Bank's favor[2], and the stay as to the foreclosure action was lifted. A foreclosure sale was held, and on December 17, 2002, Burson filed the Report of Sale with the court.[3]  On the same date, the clerk of the court issued a notice indicating that the sale had taken place and would be ratified unless cause to the contrary was shown within 30 days.[4]  Manigan filed no exceptions to the sale.[5]  On February 11, 2002, the court entered an order of ratification and referred the matter to an auditor.[6]  On May 24, 2003, the purchaser moved for a writ of possession of the property.[7]

The auditor's report was filed on July 21, 2003, and on August 15, 2003 a hearing on the motion for writ of possession was held in the trial court. Manigan appeared *pro se* at the hearing. She attempted to argue that the Bank had wrongfully accused her of being delinquent on her mortgage payments and had hindered all attempts to resolve the matter, and that the foreclosure sale was therefore improperly conducted. The trial court informed Manigan:

> Nothing has happened in this case to overturn [the] ratification of the sale. What has occurred is further action

2.  *See Manigan v. Bank of America*, No. 1007, September Term, 2002, 151 Md.App. 731 (filed May 7, 2003) (unreported), *cert. denied*, 377 Md. 113, 832 A.2d 205 (2003).

3.  *See* Md. Rule 14-305(a).

4.  *See* Md. Rule 14–305(c).

5.  *See* Md. Rule 14–305(d).

6.  *See* Md. Rule 14–305(e) and (f).

7.  *See* Md. Rule 14–102.

in consonance with [the sale]. It went to the auditor and the auditor has issued a suggested account. The auditor then issued the auditor's report.

Ma'am, this case has not been appealed. The last thing that was filed here was an objection to Motion for Judgment awarding possession. But there is nothing to stop the awarding of possession.

Manigan vaguely asserted that she "didn't receive anything to [the] effect" that the sale had been ratified, and insisted that if she "had received that [she] would have responded to it." The court responded simply that the record reflected that "[c]opies were sent" to her. It issued a writ of possession to the purchaser.

Manigan subsequently moved for reconsideration of the possession award. The court summarily denied the motion, and Manigan filed this appeal. Manigan indicates in her brief that she has since been evicted from her home.

## DISCUSSION

■ Manigan argues, in essence, that the trial court erred in issuing the writ of possession without first conducting a full evidentiary hearing into the propriety of the foreclosure. She further argues that the court erred by denying her motion for reconsideration without conducting any hearing at all.

As the trial court pointed out at the hearing on the request for the writ of possession, Manigan was sorely in need of an attorney throughout the foreclosure proceedings below. The procedures governing foreclosures are complex, and Manigan's ignorance of the procedures has resulted in her inadvertent waiver of her right to challenge the sale. Put simply, Manigan failed to object to the sale at the proper time. Her objection to the sale at the time the writ of possession was requested came too late.

■ To be sure, a party may properly appeal from the grant or denial of a writ of possession. *See, e.g., G.E. Capital Mortgage Services, Inc. v. Edwards*, 144 Md.App. 449, 798

A.2d 1187 (2002) (regarding propriety of grant of writ of possession where foreclosure sale had not yet been ratified). *See generally* Md. Code (1974, 2002 Repl. Vol.), § 12–303(1) of the Cts. & Jud. Proc. Art. (stating that even when an order regarding possession is interlocutory a party may file an immediate appeal). The appeal must pertain to the issue of possession, however, and may not be an attempt to relitigate issues that were finally resolved in a prior proceeding.

As this Court has explained:

> Under Maryland foreclosure procedures, plaintiffs are afforded two separate opportunities in which they may challenge in a state court the legality of the foreclosure. First, under Rule [14–209(b)], plaintiffs may move prior to sale to enjoin foreclosure. Secondly, after the sale but before ratification, plaintiffs have the opportunity to file objections to the sale.

*Billingsley v. Lawson,* 43 Md.App. 713, 723–24, 406 A.2d 946, 953 (1979). As we have indicated, Manigan did move prior to the sale—and for a time successfully—to enjoin foreclosure. Unfortunately, she did not timely file exceptions to the sale prior to the court's ratification of it. Maryland Rule 14–305(d) provides:

> (d) **Exceptions to sale.** (1) How taken: A party ... may file exceptions to the sale. Exceptions shall be in writing, shall set forth the alleged irregularity with particularity, and shall be filed within 30 days after the date of a notice [of the sale issued by the clerk of the court] or the filing of the report of sale if no notice is issued. Any matter not specifically set forth in the exceptions is waived unless the court finds that justice requires otherwise.

> (2) Ruling on exceptions; hearing. The court shall determine whether to hold a hearing on the exceptions but it may not set aside a sale without a hearing. The court shall hold a hearing if a hearing is requested and the exceptions or any response clearly show a need to take evidence. . . .

■ Ordinarily, upon the court's ratification of a foreclosure sale objections to the propriety of the foreclosure will no longer be entertained. As the Court of Appeals has explained:

Sound public policy requires that no person shall in a judicial proceeding be deprived of a right or charged with a default until he has been given a full and free opportunity of being heard in respect thereto, but the complement of that rule is that where one is given that opportunity, and elects to stand mute and allow the decision to go against him without protest or objection, that he is bound by it. There must of necessity be some end of litigation. The state can do no more than give the litigant "a day in court"; if he does not utilize it but suffers the decision to go against him by default, he is as conclusively and finally bound by it, as though he had actively contested it.

*Moss v. Annapolis Sav. Inst.*, 177 Md. 135, 143, 8 A.2d 881, 884 (1939). *See also* Alexander Gordon IV, *Gordon on Maryland Foreclosures* § 27.43 (4th ed. 2004).

■ " '[T]he law is firmly established in Maryland that the final ratification of the sale of property in foreclosure is *res judicata* as to the validity of such sale, except in case of fraud or illegality, and hence its regularity cannot be attacked in collateral proceedings.' " *Ed Jacobsen, Jr., Inc. v. Barrick*, 252 Md. 507, 511, 250 A.2d 646, 648 (1969) (citation omitted). *See generally Gordon on Maryland Foreclosures, supra,* § 24.3. "After the hearing on exceptions and the sale is ratified, Maryland Rule 2–535 . . . would apply." *Id.,* § 27.44 at 1150. That is, "[o]n motion of any party *filed at any time,* the court may exercise revisory power and control over the judgment in case of *fraud, mistake, or irregularity." Id.* (quoting Md. Rule 2–535(b)) (emphasis supplied by *Gordon*).

■ It is well established that "a litigant seeking to set aside an enrolled decree must prove extrinsic fraud and not intrinsic fraud." *Billingsley,* 43 Md.App. at 718–19, 406 A.2d at 951.

[A]n enrolled decree will not be vacated even though obtained by the use of forged documents, perjured testimony,

or any other frauds which are "intrinsic" to the trial of the case itself. Underlying this long settled rule is the principle that, once parties have had the opportunity to present before a court a matter for investigation and determination, and once the decision has been rendered and the litigants, if they so choose, have exhausted every means of reviewing it, the public policy of this State demands that there be an end to that litigation. . . . This policy favoring finality and conclusiveness can be outweighed only by a showing "that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy."

*Id.* at 719, 406 A.2d at 951 (citation omitted). Put simply, "[f]raud is extrinsic when it actually prevents an adversarial trial but it is intrinsic when it is employed during the course of the hearing which provides the forum for the truth to appear, albeit, that truth was distorted by the complained of fraud." *Id.,* 406 A.2d at 951.

■ "Under our cases, an irregularity which will permit a court to exercise revisory powers over an enrolled judgment has been consistently defined as the doing or not doing of that, in the conduct of a suit at law, which, conformable to the practice of the court, ought or ought not be to be done." *Id.* at 720, 406 A.2d at 952. "As a consequence, irregularity, in the contemplation of the Rule, usually means irregularity of process or procedure . . . , and not an error, which in legal parlance generally connotes a departure from the truth or accuracy of which a defendant had notice and could have challenged." *Id.,* 406 A.2d at 952.

Manigan alleges nothing in her brief that would amount to the type of intrinsic fraud that could form the basis of setting aside the ratified sale. She attacks only the actions of the Bank that led to the foreclosure sale.

Nor does Manigan properly argue irregularity as a basis for reversal. Manigan informed the trial court, at the hearing on the purchaser's request for writ of possession, that she had not received notice of the ratification of the sale. She men-

tions in her brief that she did not receive notice. Lack of notice of the ratification is not a basis of Manigan's argument on appeal, however, and Manigan has at no time elaborated on her contention or proffered any evidence in support of it. As the trial court pointed out, the docket entries reflect that the clerk did send notice to Manigan, and Manigan offers no reason to believe that the notice did not reach its destination. Moreover, she apparently has never disputed that she received notice of the sale itself, along with instruction that the sale would be ratified unless, within 30 days, she showed cause to prevent it.

In short, Manigan presents no argument that can be considered by this Court at this juncture. Therefore, we shall affirm the judgment of the trial court.

**JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.**