940 A.2d 1109

Tanya JONES

v.

Diane ROSENBERG.

No. 124 Sept.Term, 2007.

Court of Special Appeals of Maryland.

Jan. 31, 2008.

C. William Michaels, Baltimore, MD, for Appellant.

Mark D. Meyer (Diane S. Rosenberg, John A. Ansell, III, on the brief), Bethesda, MD, for Appellee.

JAMES R. EYLER, BARBERA, JJ., and JOSEPH F. MURPHY, JR. (Associate Judge of the Court of Appeals, specially assigned).

JAMES R. EYLER, Judge.

This case raises several issues stemming from a real estate foreclosure action initiated in the Circuit Court for Charles County by substitute trustees Diane S. Rosenberg and Mark Meyer, appellees, against mortgagors Donna P. Jones and Tanya L. Jones, appellants. Appellants unsuccessfully sought to stay foreclosure prior to the sale. Following the foreclosure sale, appellants filed exceptions to the sale and sought discovery. The circuit court denied discovery, overruled appellants' exceptions, and ratified the foreclosure sale.

On appeal, appellants raise several issues: (1) whether the circuit court erred in denying appellants' requests for injunctive relief to stop the foreclosure sale, under Maryland Rule 14–209(b); (2) whether the circuit court erred in quashing appellants' notices of deposition and subpoenas *duces tecum* served on appellees shortly before the hearing on appellants' second request for injunctive relief;[1] (3) whether the circuit court erred in ratifying the foreclosure sale; (4) whether the circuit court erred in denying appellants' motion to stay enforcement of the judgment ratifying the sale, pending appeal to this Court; and (5) whether the circuit court erred in

---

1. The second request for injunctive relief also served as exceptions to the foreclosure sale.

denying appellants' motion to alter or amend the judgment ratifying the sale.

Perceiving no error, we shall affirm.

## Factual Background

On August 31, 2005, appellants executed a deed of trust for property located at 10693 Jacksonhole Place in Charles County, Maryland, to secure a loan in the amount of $224,800. The lender was GreenPoint Mortgage Funding, Inc. of Santa Rosa, California. The deed of trust included a provision that the borrower, after default, had a right to have enforcement of the deed of trust suspended upon compliance with certain conditions, including the payment of all amounts due, plus expenses. The deed also contained an adjustable rate rider, with an initial interest rate of 1 percent. The deed provided the interest rate would change on November 1, 2005, by a rate calculated by adding 3.375 percent to the current rate index, but not exceeding 12 percent. The initial monthly payment was $723.05. The monthly payments were subject to change each year, and were to increase substantially after November 1, 2005.

As time progressed, the interest rate on the loan increased, and the amount of the periodic payments owed by appellants increased. By October, 2006, the loan was in default, triggering acceleration of the loan balance. Appellants were notified that the matter would proceed to foreclosure. Upon receiving notice, appellants, in a letter dated October 30, 2006, requested validation of the debt. On October 30, 2006, the foreclosure action was docketed in circuit court, and appellees were appointed as substitute trustees that same day. Appellees' statement of debt showed a balance due in the amount of $238,568.16, which consisted of $225,273.78 principal, accrued interest and other charges in the amount of $12,780.18, computed at an interest rate of 6.875 percent. Appellees filed a petition for a nominal bond on October 30, 2006, which was approved on November 20, 2006. The bond was filed on November 29, 2006, and the foreclosure sale was scheduled for November 29, 2006.

On November 10, 2006, appellees sent a letter to appellants, by certified mail and first class mail, notifying them that the foreclosure action had been filed and that an auction sale of the property would occur on November 29, 2006. On November 20, 2006, appellants, *pro se,* filed in circuit court a motion for an emergency injunction to stop the foreclosure sale and to quash service. The motion did not contain a supporting affidavit. On December 8, 2006, appellees responded to the motion.

The circuit court did not rule on appellants' motion for an emergency injunction to stop the foreclosure sale and to quash service prior to the foreclosure sale, and the sale occurred on November 29, 2006. On December 6, 2006, the report of sale and affidavit of notice were filed. The property was sold to Craig Heurich and Alison Mason for $262,000, which was in excess of the amount owed by appellants, according to the statement of debt. The circuit court issued a notice that the sale would be ratified on January 5, 2007.

On December 21, 2006, appellants, *pro se,* filed a second motion for an emergency injunction to stop the foreclosure sale or, in the alternative, to stop the ratification of the sale. The objections stated in the motion included lack of an opportunity to cure the default; lack of notice of the foreclosure sale by registered mail; that appellants had filed suit against appellees in the United States District Court for the District of Maryland on November 17, 2006, alleging that the deed of trust violated federal mortgage laws;[2] that appellants submitted a surety bond on November 20, 2006, to the clerk of the circuit court and the bond covered any debt owed;[3] that

---

2. Appellants' complaint in the United States District Court was dismissed on February 5, 2007. Appellants appealed the dismissal of the complaint and the United States Court of Appeals for the Fourth Circuit affirmed the dismissal on October 24, 2007. A copy of the complaint is attached to this opinion as Appendix A. Through other cases pending on this Court's docket, we are aware that other debtors in foreclosure proceedings have filed similar complaints in federal court.

3. The document is facially invalid. A copy is attached to this opinion as Appendix B.

appellants were denied due process; and certain other objections relating to the form of the foreclosure documents. Appellants also alleged that they paid the debt through an "international bill of exchange,"[4] although appellants now concede such documents are not recognized by Maryland courts as valid legal documents.

On December 27, 2006, appellees responded to appellants' motion, asserting that appellants' request for an injunction did not comply with the affidavit requirements of Maryland Rule 14–209(b); the international bill of exchange was a fraudulent document and frivolous; the purported bond filed by appellants was not a proper bond; the stated grounds of appellants' motion were without merit and did not state a basis for granting an injunction; to the extent the court viewed appellants' motion as constituting exceptions to the foreclosure sale, all of the exceptions had to be overruled; upon default, appellants had no right to cure, only a right to redemption; on November 10, 2006, appellants were mailed a reinstate quote and payoff quote, and appellants had an opportunity to reinstate their loan but failed to do so; appellees were in full compliance with notice requirements; and appellants had not set forth any procedural irregularities with particularity. Appellees requested that the court deny appellants' request for an emergency injunction to stop foreclosure, deny appellants' exceptions to the foreclosure sale, and grant further relief as the court deemed appropriate.

The court scheduled a hearing on appellants' motion for an injunction against foreclosure and exceptions to the sale and appellees' response, to be held on February 27, 2006. On February 12, 2006, counsel entered an appearance on behalf of appellants.[5] On February 21, 2007, appellants moved for a continuance of the hearing, which was denied on February 23, 2007. On February 26, 2007, appellants moved for a state-

---

4. The document is facially invalid. A copy is attached to this opinion as Appendix C.

5. Appellants continue to be represented on appeal, but by different counsel.

ment of payout and arrearage owed. Prior to the hearing, appellants served notices of deposition and subpoenas *duces tecum* on appellees, to occur on March 6, 2007. On February 27, 2007, the same day as the motions hearing, appellees moved to quash the notices of deposition and subpoenas *duces tecum.*

At the hearing, on February 27, 2006, appellants requested discovery of the original loan documents, including the original deed of trust, in order to determine whether the mortgage was usurious and improper, as well as discovery of whether appellants received actual notice of the foreclosure sale. By order entered on March 2, 2007, the circuit court granted appellees' motion to quash appellants' requested discovery, overruled appellants' exceptions to the foreclosure sale, ratified the sale, and ordered that the matter be referred to the court auditor for an accounting.

On March 9, 2007, appellants noted an appeal from the ratification of the foreclosure sale, and moved to stay enforcement of the ratification of sale pending appeal. Appellants did not file a supersedeas bond with the motion. Appellees filed an opposition to a stay of ratification pending appeal, and on March 15, 2007, the circuit court denied appellants' motion.

On March 20, 2007, appellants, pursuant to Maryland Rule 2–535, filed a motion to alter or amend the judgment of ratification of sale, based upon the court's revisory power under subsection (a); fraud under subsection (b); and newly discovered evidence under subsection (c). In that motion, appellants alleged that the foreclosure action was improper because appellees had violated the Truth In Lending Act (TILA), 15 U.S.C. § 1601, *et seq.,* and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.,* and that, with additional discovery, appellants could prove the violations. Appellants attached to the motion a packet of materials purportedly prepared by Linda J. Rougeux, an "auditor" with "Advocates for Justice" based in Abilene, Texas. The packet purports to represent the audit of a loan involving appellants and "IndyMac Bank," but the terms are

very different from the terms of the loan that is the subject of this case. Moreover, while the audit purports to conclude that there are possible violations of federal law with respect to the audited loan, the papers do not indicate the source of the information and do not provide a conclusion under oath. Some of the papers appear to be form documents which the organization presumably makes available to members of the public. Appellants also attached to the motion an article promulgated by the "Center for Responsible Lending," dated December, 2006, containing data on the "foreclosure risk in the subprime market" and a copy of remarks made to the Congressional Black Caucus by a policy analyst at the Center for Responsible Lending on the issue of sub-prime mortgage lending.

On March 23, 2007, appellees filed a response to appellants' motion to alter or amend the judgment. Appellees contended they were not involved in the mortgage settlement with appellants and, therefore, were not liable for any potential violations of federal mortgage laws; that appellants had not cited any authority providing that violations of federal mortgage laws were a defense against foreclosure; and that appellants had not set forth any facts or evidence to support their claims.

On April 6, 2007, the circuit court denied appellants' motion to alter or amend the judgment of ratification of sale. On April 11, 2007, the third party purchasers of the foreclosed property filed a motion requesting judgment awarding possession, and on May 2, 2007, appellants filed an opposition. On May 3, 2007, the circuit court entered an order awarding possession.

Additional facts will be added as necessary.

### Discussion

#### I. *Ratification of the Foreclosure Sale*

On appeal appellants contend their two motions for injunctive relief from foreclosure, one filed before and one filed after the foreclosure sale, were permitted under Maryland Rule 14–209(b), and that they should have prevailed on the merits.

Appellants also contend they were entitled to further discovery at the time of the February 27, 2006 hearing, and the circuit court abused its discretion in quashing their notices of deposition and subpoenas *duces tecum.* Finally, appellants contend they presented valid exceptions to the foreclosure sale, although labeled as the second motion for injunctive relief, and that the circuit court erred in ratifying the sale.

A. *Injunction to Stop Foreclosure Sale under Maryland Rule 14-209(b)*

The grant or denial of an injunction lies within the sound discretion of the trial court, and on appeal, we review the trial court's decision for an abuse of discretion. *See Md. Comm'n on Human Relations v. Downey Commc'ns, Inc.*, 110 Md.App. 493, 521, 678 A.2d 55 (1996) (citations omitted).

A debtor who owns property subject to a lien created by a lien instrument possesses three means of challenging a foreclosure: "obtaining a pre-sale injunction pursuant to Maryland Rule 14-209(b)(1), filing post-sale exceptions to the ratification of the sale under Maryland Rule 14-305(d), and the filing of post-sale ratification exceptions to the auditor's statement of account pursuant to Maryland Rule 2-543(g), (h)." *Wells Fargo Home Mortgage, Inc. v. Neal*, 398 Md. 705, 726, 922 A.2d 538 (2007) (citations omitted); *see also Greenbriar Condo., Phase I Council of Unit Owners, Inc. v. Brooks*, 387 Md. 683, 746-47, 878 A.2d 528 (2005). "In order to enjoin a sale pursuant to Md. Rule 14-209(b), the injunction must be filed *prior* to the foreclosure sale. If filed *after* the foreclosure sale, the injunction is in respect only to subsequent proceedings." *Brooks*, 387 Md. at 738, 878 A.2d 528.

In this case, appellants' first request for an injunction was not in compliance with Rule 14-209(b). That subsection states, in part:

The motion shall not be granted unless the motion is supported by affidavit as to all facts asserted and contains: (1) a statement as to whether the moving party admits any amount of the debt to be due and payable as

of the date the motion is filed, (2) if an amount is admitted, a statement that the moving party has paid the amount into court with the filing of the motion, and (3) a detailed statement of facts, showing that: (A) the debt and all interest due thereon have been fully paid, or (B) there is no default, or (C) fraud was used by the secured party, or with the secured party's knowledge, in obtaining the lien.

Appellants' motion did not comply with any of the above requirements, and the court did not err in failing to grant relief.

Appellants second request for an injunction to stay foreclosure under Rule 14–209(b) was filed after the foreclosure sale and, therefore, was untimely for purposes of halting the foreclosure sale. Consequently, we shall direct our attention to appellants' requests for discovery and appellants' exceptions to the sale.

### B. *Motion to Quash Discovery*

We review the denial of discovery under the abuse of discretion standard. *Beyond Systems, Inc. v. Realtime Gaming Holding Co., LLC*, 388 Md. 1, 28, 878 A.2d 567 (2005). A trial court abuses its discretion only if no reasonable person would take the view adopted by the trial court in denying discovery. *See id.* at 28, 878 A.2d 567.

When ruling on exceptions to a foreclosure sale, Rule 14–305(d)(2) provides: "The court shall hold a hearing if a hearing is requested and the exceptions or any response clearly show a need to take evidence." On the issue of discovery related to exceptions to foreclosure sales, Gordon on Maryland Foreclosures explains:

There are, essentially, no real guidelines for the procedures relating to exceptions and, particularly, discovery in preparation for the hearing. On request, most Circuit Court judges will allow a reasonable period of time for depositions and document production before the hearing,

albeit substantially less time than in routine civil litigation.

Alexander Gordon, IV, Gordon on Maryland Foreclosures § 24.2, at 1016 (4th ed. 2004).

 At the motions hearing, appellants requested discovery of the closing documents on the loan, including the original copy of the deed of trust, in order to show the loan was usurious and improper. Appellants claimed the original terms of the promissory note were altered after appellant signed the note, and that appellant was forced to pay $18,000 more than was legally permitted.

Appellants' counsel also explained that appellants claimed they did not receive proper notice of the foreclosure sale, and counsel requested discovery to determine whether appellants received notice. Appellants' counsel stated he had recently taken appellants' case, that prior to that appellants had been acting *pro se,* and that counsel had not reviewed the court file by the time of the hearing and needed additional time to conduct discovery.

The circuit court noted appellants' counsel made an appearance on behalf of appellants on February 12, which gave him two weeks to prepare for the motions hearing on February 27. Additionally, the circuit court noted all of the documents appellants sought for discovery were on public file, the only exception being the original deed of trust, which appellees were not required to present to appellants in proceeding with the foreclosure sale. The court then granted appellees' motion to quash the notices of deposition and subpoenas *duces tecum.*

 Regarding appellants' request for discovery of the lending documents in order to show the loan was usurious and improper, usury is not a proper ground for setting aside a foreclosure sale, and the question of usury should be considered at the time of the audit. *See Kirsner v. Sun Mortgage Co.,* 154 Md. 682, 688, 141 A. 398 (1928). Thus, the question of whether the loan was usurious or improper was not relevant to

the hearing on exceptions to the sale, and discovery of the lending documents was not necessary.

As to appellants' request for discovery as to whether they had received actual notice of the foreclosure sale, we agree with the circuit court's finding that, upon entering an appearance on February 12, appellants' counsel had sufficient time prior to the February 27 motions hearing to collect evidence on this issue. Moreover, appellants had actual notice of the foreclosure proceeding, no later than November, 2006. Therefore, we hold there was no abuse of discretion in denying appellants additional time for discovery and granting appellees' motion to quash appellants' notices of deposition and subpoenas *duces tecum*.[6]

### C. *Exceptions to the Foreclosure Sale*

■ Having failed to file a proper pre-sale injunction to the foreclosure sale under Maryland Rule 14–209(b), appellants' next recourse was to file exceptions to the sale under Rule 14–305(d). In ruling on exceptions to a foreclosure sale and whether to ratify the sale, trial courts may consider both questions of fact and law. *See S. Md. Oil, Inc. v. Kaminetz,* 260 Md. 443, 451, 272 A.2d 641 (1971) (explaining questions of fact and law may be raised in exceptions to foreclosure sales). In reviewing a trial court's finding of fact, we do "not substitute our judgment for that of the lower court unless it was clearly erroneous" and give due consideration to the trial court's "opportunity to observe the demeanor of the witnesses, to judge their credibility and to pass upon the weight to be given their testimony." *Young v. Young,* 37 Md.App. 211, 220, 376 A.2d 1151 (1977). Questions of law decided by the trial court are subject to a *de novo* standard of review. *See Liddy v. Lamone,* 398 Md. 233, 246–47, 919 A.2d 1276(2007).

---

**6.** Appellants' reference to *Pacific Mortgage & Investment Group, Ltd. v. Horn,* 100 Md.App. 311, 641 A.2d 913 (1994), is unpersuasive. The discovery at issue in *Horn* was in the context of a lawsuit by the borrower against the lender and substitute trustee for statutory violations regarding the mortgage loan, *see id.* at 317–18, 641 A.2d 913, and did not involve exceptions to a foreclosure sale.

██ After a foreclosure sale, a debtor's right to redemption ends, however, a debtor may file exceptions challenging only procedural irregularities in the foreclosure sale *Brooks,* 387 Md. at 746, 878 A.2d 528, under Rule 14–305(d). Rule 14–305(d)(1) provides:

(d) Exceptions to Sale.

(1) *How Taken.* A party, and, in an action to foreclose a lien, the holder of a subordinate interest in the property subject to the lien, may file exceptions to the sale. Exceptions shall be in writing, shall set forth the alleged irregularity with particularity, and shall be filed within 30 days after the date of a notice issued pursuant to section (c) of this Rule or the filing of the report of sale if no notice is issued. Any matter not specifically set forth in the exceptions is waived unless the court finds that justice requires otherwise.

 The procedural irregularities might include: "allegations such as the advertisement of sale was insufficient or misdescribed the property, the creditor committed a fraud by preventing someone from bidding or by chilling the bidding, challenging the price as unconscionable, etc." *Id.* at 741, 878 A.2d 528. There is a presumption in favor of the validity of a judicial sale, and the burden is on the exceptant to establish to the contrary. *See Jackson v. Townshend,* 249 Md. 8, 13–14, 238 A.2d 81 (1968) (citations omitted); *PAS Realty, Inc. v. Rayne,* 46 Md.App. 445, 446, 418 A.2d 1222 (1980) (citing *Hardy v. Gibson,* 213 Md. 493, 508, 133 A.2d 401 (1957)). Appellants raised a number of challenges in their motion opposing ratification of the sale, as outlined above. The only challenge relating to procedural irregularities in the foreclosure sale, however, was that appellees failed to send notice by registered or certified mail. The circuit court made the following finding on this issue:

I conclude that the trustees have as a matter of fact complied, and I find as a fact that they have complied with the expectations of [Rule 14–206(b)(1)–(2)]. That is to say,

and the timing contemplated by subsection 2B with regard to the notices.

There's evidence in the file here of the published notices in the local newspaper. There is evidence in the file of the postal receipts attesting to or as evidence associated with the affidavits attesting to the mailing by first class mail and certified mail.

The closest thing I've gotten to a proffer here is a suggestion that Ms. Jones didn't receive it. But that flies in the face of the actual history here where she must have received something or she wouldn't have asking [sic] us to enjoin the sale in the first place. So that suggestion is not, the only factual proffer we have here is simply not supported by the case history.

The court then denied appellants' motion to stay ratification of the sale, ratified the foreclosure sale, and ordered that the case be referred to an auditor for an accounting.

The record contains an affidavit by appellees, stating that they gave notice of the foreclosure proceedings as required by Maryland Code (1957, 2003 Repl. Vol., 2007 Supp.) § 7–105 of the Real Property Article and notice of the foreclosure sale, by regular and certified mail, advising appellants as to the time, place, and terms of the foreclosure sale. *See* Maryland Rule 14–206(b)(2) (before sale, "the person authorized to make sale shall send notice of the time, place, and terms of sale by certified mail and by first class mail to the last known address of . . . the debtor"). Attached to the affidavit are copies of the letter that was sent to appellants and copies of the postal receipts for the mailings. Appellants have not presented any evidence to the contrary. The circuit court did not err.

Appellants' challenge on the basis of improper notice was the only procedural challenge to the foreclosure sale and, thus, was the only proper exception to the foreclosure sale. Therefore, we hold the circuit court did not err in overruling appellants' exceptions to the foreclosure sale and ratifying the

foreclosure sale.[7]

## II. *Motion for Stay of Enforcement of the Judgment Ratifying the Sale, Pending Appeal*

Appellants contend the circuit court erred in denying their motion to stay enforcement of the judgment ratifying the foreclosure sale, pending appeal.

[A] stay pending appeal is governed by Rules 8–422 through 8–424. If the court determines that because of the nature of the action enforcement of the judgment should not be stayed by the filing of a supersedeas bond or other security, it may enter an order denying a stay or permitting a stay only on the terms stated in the order.

Maryland Rule 2–632(e).

■■■■ A party against whom a judgment has been rendered may stay its enforcement by filing a supersedeas bond that is in compliance with the requirements in Maryland Rule 8–423. In a foreclosure action, a supersedeas bond must be filed. *See Creative Dev. Corp. v. Bond,* 34 Md.App. 279, 282–83, 367 A.2d 566 (1976) (explaining that with the exception of six specific actions, that do not include foreclosure actions, civil judgments cannot be stayed unless a supersedeas bond is filed); *Onderdonk v. Onderdonk,* 21 Md.App. 621, 623–24, 320 A.2d 585 (1974) (explaining parties must file a supersedeas bond when moving to stay enforcement of judgment to ratify a foreclosure sale). Appellants did not file the necessary bond.

■■■■ It is well-settled law in Maryland that the rights of a bona fide purchaser of mortgaged property would not be affected by reversal of the ratification of sale, in the absence of a supersedeas bond. *Poku v. Friedman,* 403 Md. 47, 939 A.2d 185 (2008); *Baltrotsky v. Kugler,* 395 Md. 468, 474, 910

---

7. Appellants point out that, at the motions hearing, they discussed their then pending complaint in federal court, in which they asserted violations of federal law, but the circuit court failed to consider those allegations. The allegations did not constitute a procedural challenge to the foreclosure sale and, therefore, were not proper exceptions that could have been raised at the February 27 hearing.

A.2d 1089 (2006) (citations omitted). There are only two exceptions to this rule: (1) unfairness or collusion between the purchaser and trustee and (2) when the mortgagee purchases the disputed property at the foreclosure sale. *Id.* at 475, 910 A.2d 1089 (citations omitted).

 There is no contention that the third party purchasers in this case are not bona fide purchasers, and no contention that either of the two exceptions to the rule apply. Therefore, the court did not err in denying appellants' motion to stay enforcement of the judgment to ratify the sale.

### III. *Motion to Alter or Amend the Judgment of Ratification of Sale*

Finally, appellants contend the court erred in not exercising its revisory power over the judgment of ratification of sale under Maryland Rule 2–535. Appellants argue that the court abused its discretion because appellants made a showing of fraud or irregularity.

 We review the circuit court's decision to deny a request to revise its final judgment under the abuse of discretion standard. *See Mullaney v. Aude,* 126 Md.App. 639, 666, 730 A.2d 759 (1999). The effect of a final ratification of sale is *res judicata* as to the validity of such sale, except in the case of fraud or illegality. *See Bachrach v. Wash. United Co-op.,* 181 Md. 315, 320, 29 A.2d 822 (1943); *Manigan v. Burson,* 160 Md.App. 114, 120, 862 A.2d 1037 (2004) (citations omitted). The burden of proof in establishing fraud, mistake, or irregularity is clear and convincing evidence. *See Billingsley v. Lawson,* 43 Md.App. 713, 718, 406 A.2d 946 (1979). To establish fraud under Rule 2–535(b), a movant must show extrinsic fraud, not intrinsic fraud. *See Manigan,* 160 Md. App. at 120, 862 A.2d 1037 (citations omitted).

This Court explained the distinction between intrinsic fraud and extrinsic fraud in *Billingsley:*

> [A]n enrolled decree will not be vacated even though obtained by the use of forged documents, perjured testimony, or any other frauds which are "intrinsic" to the

trial of the case itself. Underlying this long settled rule is the principle that, once parties have had the opportunity to present before a court a matter for investigation and determination, and once the decision has been rendered and the litigants, if they so choose, have exhausted every means of reviewing it, the public policy of this State demands that there be an end to that litigation ... [.] This policy favoring finality and conclusiveness can be outweighed only by a showing "that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy."

*Billingsley*, 43 Md.App. at 719, 406 A.2d 946 (quoting *Schwartz v. Merchs. Mortgage Co.*, 272 Md. 305, 308–09, 322 A.2d 544(1974)).

Fraud is extrinsic when "it actually prevents an adversarial trial but is intrinsic when it is employed during the course of the hearing which provides the forum for the truth to appear, albeit, the truth was distorted by the complained of fraud." *Manigan*, 160 Md.App. at 121, 862 A.2d 1037 (quoting *Billingsley*, 43 Md.App. at 719, 406 A.2d 946). Irregularity under Rule 2–535(b), is defined as:

["]the doing or not doing of that, in the conduct of a suit at law, which, conformable to the practice of the court, ought or ought not be to be done." (citation omitted) "As a consequence, irregularity, in the contemplation of the Rule, usually means irregularity of process or procedure ..., and not an error, which in legal parlance generally connotes a departure from the truth or accuracy of which a defendant had notice and could have challenged." (citation omitted)

*Manigan*, 160 Md.App. at 121, 862 A.2d 1037 (quoting *Billingsley*, 43 Md.App. at 720, 406 A.2d 946).

In their motion, appellants made general allegations that appellees violated TILA and RESPA, and contended that with additional discovery they could prove such violations. Appellants attached a document, described as an audit report,

but which pertains to a mortgage loan that does not involve appellees and is unrelated to this case. Appellants also attached a public policy report that presented empirical data on sub-prime mortgage lending, as well as remarks made to the Congressional Black Caucus by a policy analyst at the Center for Responsible Lending on the issue of sub-prime mortgage lending. Appellants' motion contained no probative evidence showing extrinsic fraud or irregularity in the foreclosure sale and did not present newly discovered evidence. We hold the circuit court did not abuse its discretion in not exercising its revisory power over the judgment to ratify the foreclosure sale.

In conclusion, we note that we are not unaware of the issues that exist with respect to subprime mortgage lending, and that some persons believe that current foreclosure procedures do not provide debtors with sufficient opportunities to challenge foreclosure. Assuming, *arguendo*, that that belief has merit, a debtor does not advance the debtor's cause by filing documents that do not comply with the Maryland Rules, are incomplete, inaccurate, and misleading. Because we have seen some of the same "form" documents in other foreclosure cases, in which the debtor, as here, acted *pro se*, we assume that someone (not appellants' current counsel) has provided bad advice and bad documentation.

### Conclusion

We hold the circuit court did not err (1) in denying appellants' requests for an injunction to stop the foreclosure sale, (2) in granting appellees' motion to quash appellants' notices of deposition and subpoenas *duces tecum;* (3) in overruling appellants' exceptions to the foreclosure sale and in ratifying the sale; (4) in denying appellants' motion for a stay of enforcement of the judgment ratifying the foreclosure sale, pending appeal; and (5) in denying appellants' motion to alter or amend the final judgment of ratification of sale.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**

## APPENDIX A

In the United States District Court

For the District of Maryland

Greenbelt, Maryland

NOV 17 2006 AT GREENBELT
CLERK US DISTRICT COURT
DISTRICT OF MARYLAND
NIGHT DEPOSIT BOX

Case DKC 06 CV 3038

Tanya and Donna Jones Pro Se

12109 Crestwood Turn

Brandywine, MD 20613

*Plaintiff*

vs

EMC Mortgage Company

P.O. Box 141358

Irving, Texas 75014–1358

Mortgage Electronic Registration System, Inc.

P.O. Box 202

Flint, MI 48501–2026

Rosenberg & Associates, LLC

7910 Woodmont Avenue, Suite 750

Bethesda, Maryland 20814

GreenPoint Mortgage Funding, Inc.

P.O. Box 908

Newark, NJ 07101–0908

*Defendants*

*Complaint*

(Breach of Contract, Fraud)

Now comes Plaintiff, (Tanya and Donna Jones) (herein after "plaintiff") Pro Se and complains as follows;

*Jurisdiction*

1. This court has jurisdiction pursuant to diversity of citizenship in accordance with the Federal Rules of Civil Procedures.
2. This court has jurisdiction as the amount in controversy exceeds $50,000.00 in accordance with Federal Rules of Civil Procedures.

*Parties*

3. During all times mentioned in this complaint, Plaintiff were residents of the State of Maryland and resided at 12109 Crestwood Turn in Brandywine, MD 20613.
4. EMC Mortgage Company, it's agents and co-parties (defendants), was the Mortgage company licensed to do business in the state of Maryland, whose business address is P.O. Box 141358 Irving Texas 75014–1358.

*Count I*

*Breach of Contract*

5. Date of Settlement, August 31, 2005.
6. Facts; their inability to validate the alleged debt and subsequently attempted to coerce payment is also creating a commercial injury.
 a.) If "Lender" does not provide verification and/ or adequate assurance of the alleged debt as herein requested pursuant to the laws of the land, and any debt allegedly owed by me is extinguished as an operation of law. An obligation once extinct, it never revives again, *"OGDEN v. SAUNDERS,* 12 Wheat. 213[, 25 U.S. 213, 6 L.Ed. 606] (1827)

7. A notice sent pursuant to the FDCPA, Title 15 U.S.C. 1692g Section 809(b) that your claim is disputed and validations is requested. (*EEOC v. Shell Oil CO.* 466 U.S. 54, 76 n. 32, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984) and *Edelman v. Lynchburg College,* [535 U.S. 106, 122] S.Ct. [1145, 152 L.Ed.2d 188] May [March] 19, 2002)

 b.) Until the debt is validated the defendant and it's co-parties shall cease collection of the alleged debt and they must show positive proof that you owe them some money and it should not be a computer generated printout of the debt. The Defendant continued to try and collect the alleged debt during the entire validation process.

8. Plaintiff sent various letters of validation to Defendant via certified mail. Defendant was non-responsive to all letters mailed. To date Defendant has failed to comply otherwise. By and through acquiescence, silence is known as agreement of understanding by parties to consent judgment without further controversy.

 a.) The initial letter of validation was made on January 26, 2006

 b.) On February 15, 2006 another letter was mailed to Defendant

 c.) On March 8, 2006 another letter was mailed to Defendant

 d.) On March 28, 2006 yet another letter was mailed to Defendant

 e.) On April 18, 2006 another letter was mailed to Defendant

 f.) On May 22, 2006 another letter was mailed to Defendant informing them that they were in Breach of the Contract

 g.) On June 15, 2006 a Notice of Default was mailed to the Defendant

9. Any collateral attack on this agreement/contract is in Bad faith and is an attempt to violate the U.S. Constitution, Article 1, Section 10.

10. EMC Mortgage Company and its Agents is not the holder in due course.

 a.) The Defendant and its agents are required to give proof of claim/ verification of the purported debt and status as holder is due course. Such is required as a matter of due process of law. (*Morris v. Jones* 329 U.S. 545[, 67 S.Ct. 451, 91 L.Ed. 488] (1947[)])

### Count II

### Fraud

11. Plaintiffs promissory note was deposited into said customer transaction account, creating new money and increasing the assets of EMC Mortgage Company and then issued a check drawn on the customer transaction that contained the new money, there by zero balancing the ledger on the plaintiffs customer transaction account.

12. Pursuant to Generally Accepted Accounting Principles (GAAP), plaintiffs should now be paid for their promissory note when endorsed pay to the order without recourse.

13. The Defendant is indebted to Plaintiffs in the amount of the promissory note. The defendant never issued a receipt to the Plaintiffs for the promissory note and it has never been recorded.

15. The Defendants have made false and fraudulent entries into specially coded files such as Customer Transaction accounts that courts rely upon as undisputed evidence.

16. Defendant violated contract law by not property disclosing Yield Spread Premium (fraud in the factum), the Plaintiff was prevented from understanding the basic nature of the bargain when the broker and

defendant failed to properly disclose the Yield Spread Premium and what it would ultimately mean to the Plaintiff and the interest rate.

17. Defendant failed to acquire a UCC–1 on the property as required and in contravention of Article 9 of the UCC.

 a.) The Plaintiffs must sign the UCC–1 for the original and each time the note is sold the Plaintiffs must sign again for each new assignee.

 b.) Defendant failed to provide that the Plaintiffs signed papers acknowledging receipt of the UCC–1 lien.

## Count III

### Unjust Enrichment

18. Plaintiffs are no longer liable for additional charges pursuant (GAAP).

19. Defendant sold promissory note to a third party, while requiring plaintiff to submit monthly payments that were not due or owed.

20. Defendants have never made a assessment or signed an Assessment Certificate under penalty of perjury, true, correct, complete and not misleading.

21. Defendant never risked any of its funds in the purported loan transaction.

Wherefore, the plaintiff pray this Honorable Court award judgment in the amount of Five Hundred and Fifty Thousand dollars (550,000.00) plus interest, filing fees and other court costs for unjust enrichment.

## Count IV

### Violations of Truth in Lending Act (TILA)

22. Plaintiff does not need to prove that the lender intended to violate the TILA in order to prove a violation (*Wright v. Tower Loan of Mississippi, Inc.* 679 F.2d

436, 445 [(]5th Cir.1982[)]); *(Mills v. Home Equity Group,* 871 F.Supp. 1482, 1485–86 [(]D.D.C.1994[)])

23. Defendant failed to provide a copy of the appraisal in the loan documents

 a.) Defendant failed to provide that the appraisal meets FNMA/FHLMC standards for establishing value per FNMA/FHLMC MRI's /ALL Regs/12 USC § 3349(a)(1)(2)

 b.) Defendant failed to provide that appraiser meets licensing requirements (1,000,000 < State Certified) per 12 USC § 3342(1) or (2) and § 3350(5)(A)(B) and (C)

24. Defendant tailed to provide that the finance disclosure form has an OMB number, Title 12 and 31 U.S.C. § 1901.

 c.) Defendant failed to provide that either the Note or Mortgage had a valid OMB number. *(Paperwork Reduction Act of 1995)*

 d.) Defendant tailed to provide a complete copy of all loan documents signed by both the lender and the borrower within three days of consummation, both the lender and the borrower must sign the Note and Mortgage or Deed of Trust.

25. Defendant failed to provide a separate sheet for each of the charges summarized on the Good Faith Estimate.

26. Defendant failed to provide to the Plaintiffs a settlement statement disclosing interest rate. **Violation:** Pursuant Title 12 Code of Federal Regulation, Section 226.18(j).

27. Defendant failed to provide the Plaintiffs with a notice of right cancel or rescind in their mortgage documents and it must be two copies for each borrower. **Violation:** *Regulation Z §§ 265.5(a)(1) and 226.17(a)(1), 15 USC 226.15(b) and 226.23(b).*

28. Defendant failed to provide to the Plaintiffs a right to cancel signed by both parties. **Violation:** Pursuant 12 Code of Federal Regulations, § 226.18 et seq.

29. Mortgage lenders who failed to provide disclosures prior or at time of signing contrary to TILA is a UDAP violation. *Hill v. Allright Mortgage Co.*, 213 B.R. 934.

30. The mortgage lender failed to provide that certain disclosures were clear and conspicuous. Various documents among the loan papers were confusing. *Violation Equal Credit Opportunity Act Codified to 12 C.F.R. § 202.1*

### The Court reserves the right to condition rescission

If there are two or more homeowners who are borrowers, each one must receive two copies of this notice. If the lender does not provide two copies of the Notice of Right to Cancel at the time the loan is signed each homeowner borrowing against his or her home, each homeowner has the right cancel the loan for three years after he or she has signed the papers. *Violation: Regulation Z §§ 226.5(a)(1), 15USC 226.15(b) and 226.23(b)*

31. Defendant violated 12 USC § 2604 et seq.

 A. 15 U.S.C. §§ 1604(b), 1638(b)(1); Regulation Z, 12 C.F.R. §§ 226.18 et seq.

 B. 15 USC Section 1638(a)(2)(B), (a)(9), (a)(11) and (a)(12) and Regulation Z, Part 226.17 et seq.

 C. 12 U.S.C. 2601–17, RESPA Section 8, (24 CFR 3500.21)

 a) The Defendant gave a kickback to the broker violating RESPA and Unfair Deceptive Trade Practices.

 b) The Defendant paid the Yield Spread Premium to the Broker in exchange for the Broker selling an increased interest rate to the borrower (the broker was paid 1,686.00).

 c) The Defendant should require invoices for all appraisals And processing fees due to be paid out to third

parties. There is no invoice for the 790.00 processing fee paid to the broker on the HUD–1.

## CRIMINAL AND CIVIL LIABILITIES UNDER TILA AND RESPA

The Defendant willingly and knowingly failed to comply with the requirements of the TILA and should be fined not more than 5,000.00 per violation or imprisoned not more than one year, or both. *TILA section 112.* The Defendant should also be held liable to the Plaintiff for actual damages and court cost and for other damages arising out of individual or class action if certain requirements of the TILA were violated. *TILA section 130 and 131.* A Creditor may be held liable to a consumer for Failure to comply with RESPA Section 8 Prohibitions, Regulation X, 24 CFR 3500 re kickbacks and unearned fees: (1) a fine of not more than $10,000.00 or imprisonment for not more than one year, or both; (2) civil liability equal to three times the amount of any charge paid for such settlement service; and (3) court cost and attorney fees. Under Title 15 USC § 1601(a) any consumer harmed by a violation of TILA may bring a suit against the lender. Generally TILA provides for the following remedies; (1) actual damages (2) damages Twice the amount of any finance charge in connection with the transaction (3) damages Not less than $200 or greater than $2000 for each violation (4) attorney's fees.

### Jury Demand

Plaintiff request a trial by jury guaranteed by both state and federal constitutions. *Bill of Rights Amendments VII.*

### Prayer for Relief

Wherefore, the plaintiff demand judgment:

A. Awarding plaintiff one million dollars (1,000,000.00).

B. Awarding plaintiff the reasonable costs, including interests, court costs, and legal fees for this action.

C. And awarding plaintiffs punitive damages in the amount of One Million Dollars (1,000,000.00)

D. Granting Plaintiff such other and further relief as may be just

Respectfully submitted,

by /s/ Tanya Lorraine Jones

/s/ Donna Jones

Tanya Jones

Donna Jones

12109 Crestwood Turn

Brandywine, MD. 20613

## APPENDIX B

# SILVER SURETY BOND # TLJ10693

County of Prince George's
State of Maryland

I, Tanya Lorraine Jones , do hereby enter myself security for the costs in the cause, and acknowledge myself bound to pay cause to be paid (effect payment) all costs which may accrue in such actions upon proof of claim and proof of loss to any party injured by any UNBONDED claim presented against (TANYA LORRAINE JONES ). And, I (Tanya Lorraine Jones) underwrite with my private exemption(Tanya Lorraine Jones ) (261597522), all such costs that may be proven.

Dated this 15th day of October, 2006

Tanya Lorraine Jones, agent

action non datur non damnificato

## JUSTIFICATION OF SURETY SUBROGATION

**County of Prince George's** )
 ) ss
**State of Maryland** )

Personally appeared this day before me TANYA LORRAINE JONES of the County and State aforesaid, surety on the bond of Tanya Lorraine Jones, being duly sworn, deposes and says that he is seized of his right mind, and that over and above all of her just debts and liabilities, in property not exempt by law from levy and sale under execution, of a clear unencumbered estate of the value in the excess of (unlimited), within the jurisdiction of this State and/or the District of Columbia.

Subscribed and sworn to before me NAN ETTE JOHNSON , a Notary Public residing in Prince George's, Maryland State. On the ____18th____ day of October, 2006

Notary Public Seal

My Commission Expires
2-1-2010

12109 Crestwood Turn
Brandywine, Maryland 20613
(Tanya Lorraine: Secured Party)

(County of Prince Georges)

(state of Maryland) Asseveration

(United States of America)

(.-*Tanya Lorraine Jones*) Only in capacity as beneficiary to the Original Jurisdiction
NOTICE OF SURETY ACT A1'4D BOND
Re: UCC Contract Trust Account number <u>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</u>

KNOW ALL MEN, BY THESE PRESENTS; I, (:Tanya Lorraine Jones), Principal,Titled Sovereign, neutral, surety, guarantor, a free man upon the free soil of (Maryland), state that I am not a corporation, am a living being, of legal age, competent to testi &, have personal first-hand knowledge of the truths and facts stated herein as being true, correct, complete, certain, and not misleading.

I, (:Tanya Lorraine Jones), of my own free will and accord, in the presence of Almighty God, in capacity as beneficiary to the Original Jurisdiction, in good conscience, do willingly undertake to act as surety, to pledge and provide private bond, in the amount of twenty-one Dollars coinage, minted by the American Treasury (at the legal and lawful 24 to 1 ratio prescribed by law) united States of America, Lawful coin dollars of the united States of America, personally held in my ownership and possession. This undertaking is in accordance with Article VII in the Bill of Rights of the Constitution of the United States.

This bond is to the credit of the private part listed hereon, (:Tanya Lorraine Jones) capacity as beneficiary to the Original Jurisdiction, by his appellation, as full faith and credit guarantee to any Lawful Bill in redemption, duly presented under Seal in Lawful specie money of the account of the untied States of America, Original Jurisdiction, to wit, pursuant and in parity to the cost-expense ration of senate bill 760 on fill with this State.

The Bill of Redemption is a tender as set off for any alleged contract, agreement, consent, assent purportedly held, as an obligation of duty against (:Tanya Lorraine Jones) so as to cause an imputed disability, or presumption against the capacity, Rights and powers of (:Tanya Lorraine Jones). The specific intent of the bond, under seal, is to establish, by My witness, the good credit and Lawful money specie of (:Tanya Lorraine Jones).

I, (:Tanya Lorraine Jones), do make this surety, pledge, bond, under My seal, as full faith and credit guarantee, to any Lawful Bill, duly presented, to Me under Seal, *under penalties of perjury*, in Lawful money of account of the united States of America,

86

in the matter of correct public judicial/corporate actions in the forum of Original Rules.

Original Jurisdiction, for the benefit and credit of the peculiar private party listed above and their heirs and assigns.

The intent of the bond, under Seal, is to establish, by My witness, the good credit, in the sum certain amount of at least twenty-one dollars in silver coinage, which carries no debt obligation worldwide, minted by the American Treasury, united States of America, Lawful specie dollars of the united States of America, available to the bond the actions of the private party listed above, and further, in reservation of Rights under common law and customs of the united States of America, Original Jurisdiction, Original Rules, has, before this assembly of Men, a bond in tender of twenty-one Dollars Silver, Coinage Act of A.D. 1792, Bond of Identity and Character OAS proof positive, competent evidence, (:Tanya Lorraine Jones,)cannot be bankrupt, the *causa debendi,* not *cessio bonorum,* or *aforma pauperis, dolus* trust (TANYA LORRAINE JONES©™ ).

The life of this bond covers five *(5)* years from the date entered below unless the claimant enters a true bill of particulars and all related causes of action and advice of counsel (who claimant works for?) and information with testamentary documentation under the penalties of perjury per Title 26 USC 6065 into evidence in the case of the peculiar private party listed above, in which case the life of the bond will be extended for a period of two (2) years after such documentation is presented under the penalties of perjury per Title 26 USC 6065 in the case of the peculiar party listed above, whereby, by the signature Jurat and Seal of (:Tanya Lorraine Jones,), in capacity as beneficiary of the Original Jurisdiction, surety, guarantor herein confirms, attests, and affirms this bond. All assumptions and presumptions have to be proven in writing, signed and sealed before three witnesses as a valid response, if any.

Upon failure of response required under the three (3) day grace period under Truth in Lending, Regulation Z, to respond and rebut, point for point, this Notice of Surety Act and Bond, from receipt, UCC Section 1-204, unless a request for an extension of time is presented in writing, claimant is hereby collaterally estopped from any further adversarial actions against the peculiar private party listed above, and for good cause not limited to the laws of collateral estoppel, coercion, fraud and want of subject matter jurisdiction, the peculiar private party listed above demands that the cause(s) be vacated, dismissed and the accounts be immediately discharged . with prejudice. A lack of response or rebuttal under the penalties of perjury means claimant assents to this Notice of Surety Act and Bond and that a fault exists, UCC Section 1-201 (16), creating fraud through material misrepresentation that vitiates all forms, contracts, testimony, agreements, etc. express or implied, from the beginning, UCC Section 1-103, of which claimant may rely on, and there is no longer permission by consent or assent for any demand of payment being ordered or levied against the peculiar private party listed above; and the peculiar private party listed above further demands that the record be expunged and the records and facts

of the above attached captioned federal agency for their investigation of violations of federal law and any interlocking agencies, et al. **Failure to comply pursuant to the Truth in Lending Act will negate all remedies for claimant.**

Any Third Party compelled to serve will make claimant liable for civil and criminal prosecution in accordance with the Erie and Clearfield Doctrines.

NOTICE TO THE PRINCIPALS IS NOTICE TO THE AGENTS
NOTICE TOT HE AGENTS IS NOTICE TO THE PRINCIPALS

Teste Meipso

Done this the 17th day of the October month, anno Domino, in the year of our Lord, two thousand, and six

X ___ Tanya Larraine Jones ___ Secured Party
(: Tanya Lorraine Jones only in capacity as beneficiary of the Original Jurisdiction

All RIGHTS RESERVED WITHOUT PREJUDICE, UCC 1-308

County of Prince Georges)
) ss:
(State of Maryland) )

(:Tanya Lorraine Jones known by Me or made known for Me by proper identification and duly sworn, Certified, Verified, and Exemplified, pursuant to applicable state status this 17th day of the October month, in the year of our Lord, two thousand and six.

Notary
Marriette Johnson

My Commission Expires: 2-1-2010

# 88

## APPENDIX C

**INTERNATIONAL BILL OF EXCHANGE (UNCITRAL Convention)** No. [ ]

PURSUANT TO AND IN ACCORDANCE WITH FINAL ARTICLES OF THE UNCITRAL CONVENTION IN EFFECT ON THE DATE HEREOF.

REF: Ratified Convention Articles 1-7, 11 12, 13, 46-3, 47-4(c), 51

For International / Interstate and Cross-Border Transactions.

Registered Mail # RB 503 231 537 US

ORIGINAL BANKABLE PAPER

PUBLIC POLICY DOCUMENTARY DRAFT ISSUED BY A PRIVATE UNINCORPORATED NATIONAL BANKING ASSOCIATION

Guaranteed Legal Tender Obligation of the Corporate UNITED STATES

Legal Tender for All Debts, Public Charges, Taxes and Dues payable without Deductions for and Free of any Levy, Dukes, or Impost of any nature in UNITED STATES DOLLARS [USD].
PRESENT DIRECTLY TO THE COLLECTING PARTY WITH DOCUMENTS. ACCEPTANCE FOR HONOR TO CREDIT ON SIGHT.

RECORDED / REGISTERED / CERTIFIED FUNDS No. (UCC3 No. 0060608181284270) **DOCUMENT No.** 106913

PER GUARANTEE OF U.C.C. CONTRACT UNITED STATES TREASURY PRIORITY PREPAID EXEMPT ACCOUNT / BOND No. E95523290

CREDIT UPON SIGHT TO PAYEE: JOHN VELLA EMC MORTGAGE COMPANY ACCOUNT #0014109946
2760 Lake Vista Drive Lewisville, TX. 75067

**DRAWEE:** SECRETARY OF THE TREASURY OF THE UNITED STATES
OR OTHER AUTHORIZED REPRESENTATIVE OF THE UNITED STATES
THRU ENS LEGIS U S. CITIZEN-TRUST JONES TANYA LORRAINE 36159752-
C/37 Jay Street N E
Washington D.C. 2351°

☐ COPY Presented For Acceptance On Demand

**BILL OF EXCHANGE**
(an obligation of the United States)

CREDIT UNCONDITIONALLY REMIT AT PAR VIA FEDWIRE

TO THE ORDER OF EMC MORTGAGE COMPANY US $ 227,273.78 USD

IN THE SUM CERTAIN AMOUNT OF: Two Hundred Twenty Seven Thousand Two Hundred Seventy Three 78/100————————DOLLARS

**Drawer:** Tanya-Lorraine: Jones, Receiving post at:
private banker c/o General Delivery
International (i) Brandywine Maryland by rule of lex domicilia
united States of America 1776

Signature By _____ , agent, U.C.C. 3-402(b)(1) November 15, 2006
"As good as aval", Authorized Representative, Date
As Holder-in-Due-Course of the Account.

On this 15th day of November, A.D., Two Thousand Six, before me, a Notary Public of the state of Maryland, came a man who proved to me on the basis of satisfactory evidence to be the man whose signature is subscribed hereon. The said man solemnly swore under oath that he has first hand knowledge of the facts contained herein and that they are true, correct , complete and certain.
Signature By _____ Notary Public

VACYLLA WILLIAMS
Notary Public
Montgomery County
Maryland
My Commission Expires Jul 6, 2008

Special Instructions (Treasury Control System (offset payments))
1. Noncash Item-Prepaid Electronic Funds Transfer Only.
2. This Sight Draft of Bankable Paper Guaranteed as a Direct Obligation of the United States is considered as a [...] contractual claim / offer to include those that are verbal. This valuable document written in Good Faith under the Doctrine of Necessity and Tendered for Transfer by Assignment of Account to the Drawee to Render Settlement in Full Satisfaction and Closure of Claim / Account No. (none) by the transfer of credit for credit on account.
3. See enclosed Letter of Instruction Document # 106913A, and Memorandum of Law and Points and Authorities.
4. Accepted for Value invoice / demand instrument and FORM UCC3 must remain attached to this instrument.

**ACCOUNT DOMAIN:**
PAYOR: SECRETARY OF THE TREASURY OF THE UNITED STATES / U.S. SECRETARY OF TRANPORTATION
Bank UNITED STATES DEPARTMENT OF THE TREASURY – Treasury Control System (offset payments)
TOCS, P.O. BOX 1686, BIRMINGHAM, AL 35201-1686

DOCUMENT No ABA ROUTING No ACCOUNT No
C106913C A062736011A 95523290C

LETTER OF INSTRUCTION REGARDING INTERNATIONAL BILL OF EXCHANGE No
REGISTERED MAIL No US

Creditor Secured Party Document No
Notary Acceptor

Registered Mail No US

### LETTER OF INSTRUCTION

Your charges are Accepted for Value and for Consideration in Return for full settlement/discharge and closure of your demand presentment letter concerning account # Tanya-Lorraine: Jones, Creditor Secured Party does not accept your contract or the conditions of your contract, however accepts your invoice for value and honors it with this *Discharge instrument as the remedy provided by law.*

The attached International Bill of Exchange Document No is tendered in the amount of $ for full settlement and closure of your account # . These Instruments are presented by a Notary Public on demand for acceptance or dishonor.

1) Process the International Bill of Exchange through the collection department of your bank.
2) Your bank is required by law to treat the Instrument as an obligation of the United States to the bank.
3) *Once the International Bill of Exchange is used as an asset such as in a borrower in custody (BIC) arrangement, you are required by law to adjust the account, provide to me a copy of the executed/franked document and evidence of the discharge accounting within 30 days of receipt of these documents.* (See attached Memorandum of Law and Points and Authorities document)
4) Should you fail to adjust the account and/or respond within 30 days, the Notary Public will note your non response.
5) Should you fail to respond and act accordingly, your non action will be evidence of conversion (theft) of funds.

Return to.

The enclosed International Bill of Exchange No. , Points and Authorities, (Accepted for Value presentment), and this letter of Instruction are presented by.

_____ , Notary Public, agent, UCC 3-402(b)(1)

Dated: _11-2-06_

> VACYLLA WILLIAMS
> Notary Public
> Montgomery County
> Maryland
> My Commission Expires Jul 6, 2008

ATTACHMENT TO INTERNATIONAL BILL OF EXCHANGE No
Page 1 of 1