REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2409

September Term, 2013

MICHELLE HOBBY

v.

JOHN BURSON

Wright,
Graeff,
Berger,

JJ.

Opinion by Berger, J.

Filed:  February 27, 2015

This appeal arises out of an order of the Circuit Court for Prince George's County denying exceptions to a foreclosure sale filed by Michelle Hobby ("Hobby"). On April 13, 2009, Hobby refinanced her residence with a loan obtained from Freedom Mortgage Corporation ("Freedom") that was secured by a deed of trust on the property. Hobby defaulted on the mortgage and the substitute trustees[1] brought an action to foreclose the deed of trust. Hobby's property was ultimately sold at a foreclosure sale. On appeal, Hobby presents two issues[2] for our review, which we have rephrased as follows:

> 1. Whether the circuit court erred when it declined to dismiss the foreclosure action.

---

[1] The original trustee named in the deed of trust was Thomas P. Dore. The deed of trust permitted Freedom, as the lender, to appoint successor trustees for the original trustee. The deed of trust provided, in pertinent part:

> Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

[2] The issues, as presented by Hobby, are:

> 1. Whether The Circuit Court For Prince George's County Erred When It Failed To Dismiss This Foreclosure Action Because The Mortgagee Failed to Comply With HUD Loss Mitigation Regulations?
>
> 2. Whether The Circuit Court For Prince George's County Erred When It Failed To Vacate the Sale of Appellant's Property?

2. Whether the circuit court erred in denying Hobby's exceptions to the foreclosure sale.

For the reasons that follow, we affirm the judgment of the Circuit Court for Prince George's County.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 13, 2009, Hobby refinanced her home with a loan from Freedom in the amount of $469,947. Freedom secured its loan by way of a deed of trust on Hobby's property. A few months later, Hobby defaulted on the loan due to her failure to remit several required payments to Freedom. Thereafter, Hobby requested a loan modification from Freedom. Freedom denied the request to modify the loan because the deed of trust had not been properly recorded. Freedom subsequently initiated a quiet title action which established the deed of trust as a valid and enforceable first lien against Hobby's property.

A representative of Freedom[3] visited Hobby's home on February 27, 2010 in connection with Hobby's request to modify her loan. Prior to this date, Freedom had unsuccessfully attempted to contact Hobby via telephone. Hobby was not home when the representative arrived, so the representative spoke with Hobby's neighbors and left a contact letter on the front door of Hobby's residence.

---

[3] Testimony by one of the substitute trustees at the hearing in the circuit court suggests that this representative may have been employed by LoanCare Servicing Center, Inc., who serviced the loan from Freedom to Hobby. Regardless, the individual who visited Hobby's property on February 27, 2010 was representing the interests of Freedom as the lender.

On October 29, 2010, Freedom sent Hobby a notice of intent to foreclose which, pursuant to §7-105.1(c) of the Real Property Article of the Maryland Code, was accompanied by a loss mitigation application.[4] Subsequently, on July 6, 2012, the substitute trustees filed an order to docket and informed Hobby that she had the option of participating in a face-to-face foreclosure mediation with Freedom if she so desired.

On August 28, 2012, Hobby filed a Chapter 7 Bankruptcy Petition which automatically stayed the substitute trustees' foreclosure proceedings. At Freedom's request,

_____

[4] §7-105.1(c) of the Real Property Article provides, in pertinent part:

> (1) Except as provided in subsection (b)(2)(iii) of this section, at least 45 days before the filing of an action to foreclose a mortgage or deed of trust on residential property, the secured party shall send a written notice of intent to foreclose to the mortgagor or grantor and the record owner.

> \* \* \*

> (5) For an owner-occupied residential property, the notice of intent to foreclose shall be accompanied by:

>> (I) A loss mitigation application:

>>> 1. For loss mitigation programs that are applicable to the loan secured by the mortgage or deed of trust that is the subject of the foreclosure action; or

>>> 2. If the secured party does not have its own loss mitigation application, in the form prescribed by the Commissioner of Financial Regulation . . .

Md. Code (1974, 2010 Repl.Vol.), § 7-105.1(c) of the Real Property Article.

3

however, the bankruptcy court lifted the stay on the foreclosure of Hobby's home on December 14, 2012.

Hobby elected to participate in a foreclosure mediation session with Freedom on February 12, 2013. During this meeting, Hobby and Freedom reached an agreement wherein Freedom agreed not to proceed with its foreclosure until it reviewed, and acted upon, Hobby's application for a loan modification. Freedom also reserved the right to resume its foreclosure proceedings if Hobby failed to submit certain documentation supporting her application for a loan modification in a timely manner. On March 4, 2013, pursuant to the mediation agreement reached by Hobby and Freedom, the circuit court ordered that any foreclosure sale of Hobby's property be stayed for 60 days. The order further provided that the foreclosure case would be automatically dismissed without prejudice after the expiration of the 60 day stay, unless the substitute trustees filed a motion to lift the stay.

Ultimately, Hobby's request for a loan modification was denied. Thereafter, the circuit court granted the substitute trustees' request to lift the stay on the foreclosure proceedings. Hobby responded by filing a motion to stay or dismiss on April 2, 2013. In her motion, Hobby alleged that Freedom violated 24 C.F.R. §203.604(b), which was incorporated into the deed of trust in this case, by not affording her an opportunity to engage in face-to-face mediation prior to the initiation of foreclosure proceedings. Nevertheless, on May 21, 2013 the substitute trustees conducted a foreclosure sale at which Freedom

4

purchased Hobby's property. The substitute trustees filed a report of the foreclosure sale with the circuit court on June 18, 2013.

On June 5, 2013, the circuit court entered an order[5] granting Hobby's April 2, 2013 motion to stay and dismiss. The substitute trustees subsequently moved to vacate the circuit court's order dismissing their foreclosure case. The circuit court granted the substitute trustees' motion, vacated its June 5, 2013 order, and set a hearing on Hobby's motion to stay or dismiss for August 26, 2013. The circuit court ultimately denied Hobby's motion to stay or dismiss, explaining its reasoning as follows:

> [Hobby] alleges that [Freedom] failed to comply with 24 C.F.R. § 203.604(b), which requires that the mortgagee have a "face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid." However, under 24 C.F.R. §203.604(c)(5), if reasonable efforts to arrange such a meeting are unsuccessful, it is not necessary. At a minimum, the mortgagee must send a letter to the mortgagor and make at least one trip to the mortgagor at the mortgaged property.

> At the hearing on August 26, 2013, [the substitute trustee] submitted a Field Contact Sheet, which was admitted into evidence as Plaintiff's Exhibit 1. This record demonstrated [Freedom's] multiple attempts to contact [Hobby] in order to arrange a face-to-face meeting: a phone call and voice-mail, a field visit to the mortgaged property, and a letter left at the front door of the home. Neighbors of [Hobby] confirmed her occupancy of the home. [Hobby's] refusal to acknowledge these overtures cannot supply the basis for the argument that such

---

[5] The text of the order indicates that it was signed on May 3, 2013, but it was not entered into the record for this case (i.e. docketed) until June 5, 2013.

5

attempts were not made before foreclosure proceedings were initiated.

(citations omitted).

Following the circuit court's denial of Hobby's motion to stay or dismiss, Hobby filed exceptions to the foreclosure sale. Hobby contended that the foreclosure sale was deficient because it occurred while a motion to stay or dismiss was pending before the circuit court. Hobby further claimed that the circuit court had already signed an order dismissing the foreclosure case without prejudice when the foreclosure sale occurred. The circuit court overruled Hobby's exceptions and ratified the foreclosure sale. In addressing Hobby's argument, the circuit court noted that:

> [Hobby] is correct in that the sale occurred after the Order of Dismissal was signed, [the substitute trustee] properly notes that such Order was not entered until after the sale. Furthermore, the Court finds that [Hobby] is not unfairly prejudiced by the timing of the foreclosure sale; rather, [the substitute trustee] and [Freedom] would be unfairly prejudiced if this Court were to grant [Hobby's] Motion.

This timely appeal followed.

## DISCUSSION

### I. The Circuit Court Properly Declined to Dismiss the Foreclosure Action

#### A. Standard of Review

> As the Court of Appeals stated in *Bates v. Cohn*, 417 Md. 309, 9 A.3d 846 (2010), "[b]efore a foreclosure sale takes place, the defaulting borrower may file a motion to 'stay the sale of the property and dismiss the foreclosure action.' " *Id*. at 318, 9 A.3d 846 (quoting Md. Rule 14–211(a)(1)). In other words, the

6

borrower "may petition the court for injunctive relief, challenging 'the validity of the lien or . . . the right of the [lender] to foreclose in the pending action.' " *Id*. at 318–19, 9 A.3d 846 (quoting Md. Rule 14–211(a)(3)(B)). "The grant or denial of injunctive relief in a property foreclosure action lies generally within the sound discretion of the trial court." *Anderson v. Burson*, 424 Md. at 243, 35 A.3d 452 (2011)(and cases cited therein). Accordingly, we review the circuit court's denial of a foreclosure injunction for an abuse of discretion. *Id*. We review the trial court's legal conclusions de novo. *Wincopia Farm, LP v. Goozman*, 188 Md.App. 519, 528, 982 A.2d 868 (2009).

*Svrcek v. Rosenberg*, 203 Md. App. 705, 720 *cert. denied*, 427 Md. 610 (2012).

## B.     Freedom Complied with the Requirements of 24 C.F.R. § 203.604

Hobby contends that the circuit court improperly denied her motion to stay or dismiss Freedom's foreclosure action. In particular, Hobby argues that Freedom failed to comply with a particular federal regulation, 24 C.F.R. § 203.604, that applies to the deed of trust in the instant case. This regulation requires mortgagees to engage in certain loss mitigation procedures before they may foreclose on a property that serves as the mortgagor's residence. Indeed, Freedom, the substitute trustees, and Hobby all acknowledge that the deed of trust in this case incorporates 24 C.F.R. § 203.604 by virtue of the following clause:[6]

> (d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not

---

[6] We note that in *Wells Fargo Home Mortgage, Inc. v. Neal*, the Court of Appeals considered a deed of trust with an identical clause to be subject to the requirements of 24 C.F.R. §203.604. 398 Md. 705, 712 (2007).

7

authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

Hobby contends that Freedom failed to comply with the requirements of 24 C.F.R. § 203.604 because it did not arrange a face-to-face interview with Hobby before initiating foreclosure proceedings against her. 24 C.F.R. § 203.604(b) provides:

> The mortgagee must have a face-to-face interview with the mortgagor, *or make a reasonable effort to arrange such a meeting*, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced, or at least 30 days before assignment is requested if the mortgage is insured on Hawaiian home land pursuant to section 247 or Indian land pursuant to section 248 or if assignment is requested under § 203.350(d) for mortgages authorized by section 203(q) of the National Housing Act.

24 C.F.R. § 203.604(b)(emphasis added). The text of 24 C.F.R. §203.604, therefore, does not require that a face-to-face interview actually occur, provided the mortgagee makes "a reasonable effort to arrange such a meeting." Indeed, the very next subsection of the regulation reinforces this interpretation by providing that:

> A face-to-face meeting is not required if:
>
> > (1) The mortgagor does not reside in the mortgaged property,
> >
> > (2) The mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either,

(3) The mortgagor has clearly indicated that he will not cooperate in the interview,

(4) A repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or

(5) *A reasonable effort to arrange a meeting is unsuccessful.*

24 C.F.R. § 203.604(c)(emphasis added). The regulation further defines "a reasonable effort" as follows:

A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at *a minimum of one letter sent to the mortgagor* certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include *at least one trip to see the mortgagor at the mortgaged property*, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property.

24 C.F.R. § 203.604(d)(emphasis added).

In denying Hobby's motion to stay or dismiss the foreclosure case against her, the circuit court concluded that Freedom made a reasonable effort to arrange a face-to-face mediation with Hobby before the substitute trustees initiated the foreclosure action. The circuit court was particularly persuaded by a Field Contact Sheet proffered by the substitute trustees. This Field Contact Sheet detailed several attempts by Freedom to contact Hobby,

9

which all occurred before February 28, 2010.[7] The Order to Docket that initiated the foreclosure case against Hobby was not filed by the substitute trustees until July 6, 2012, over two years later. Therefore, the circuit court concluded that the "phone call and voice-mail, [the] field visit to the mortgaged property, and [the] letter left at the front door of the home," all detailed in the Field Contact Sheet, constituted "adequate attempts to contact [Hobby] in compliance with federal regulations under the Housing and Urban Development Act."

We hold that the circuit court did not abuse its discretion in denying Hobby's motion to stay or dismiss in this proceeding. As the circuit court correctly noted, the provisions of 24 C.F.R. § 203.604 do not require a face-to-face mediation prior to foreclosure if the mortgagee makes a reasonable effort to arrange such a meeting. To qualify as a reasonable effort under 24 C.F.R. §203.604, the mortgagee must send at least one letter to the mortgagor and make one trip to the mortgaged property.

The Field Contact Sheet admitted into evidence -- without any objections from Hobby -- indicates that a representative of Freedom visited the mortgaged property on February 27, 2010, and left a letter for Hobby at the residence upon discovering that she was not home. As the trial court properly found, this clearly established that Freedom made a

_____

[7] We note that the Field Contact Sheet is accompanied by photographs of the mortgaged property, taken by Freedom's representative, that are time-stamped bearing the February 27, 2010 date. These photographs indicate that the representative visited the mortgaged property on that date. Furthermore, the Field Contact Sheet is accompanied by a photograph, time-stamped with the February 27, 2010 date, showing a letter left wedged into the front door of the property by the Freedom representative. This photograph indicates that the representative confirmed delivery of a letter to Hobby's residence on that date.

reasonable effort, as defined by the applicable federal regulations, to arrange a face-to-face mediation with Hobby before it elected to foreclose on the property. At the hearing on her motion to stay or dismiss, Hobby failed to present any testimony or evidence that contradicted the information contained in the Field Contact Sheet. The circuit court's decision, therefore, was supported by unambiguous, uncontested evidence. Accordingly, we hold that the circuit court did not abuse its discretion in denying Hobby's motion to stay or dismiss.

Assuming, *arguendo*, that Freedom did not make a reasonable effort to arrange a face-to-face mediation with Hobby prior to foreclosure, Hobby was not prejudiced by the lack of pre-foreclosure mediation. In the order to docket filed on July 6, 2012 (which initiated the foreclosure action), the substitute trustees informed Hobby that she could participate in a face-to-face foreclosure mediation session with Freedom before they chose to execute their power of sale. Hobby elected to engage in mediation with Freedom and, on February 12, 2013, the parties reached an agreement. The terms of this agreement provided that the substitute trustees would halt their foreclosure until they had evaluated Hobby's application for a loan modification and made a decision on her application. In order for Freedom to evaluate Hobby's application, Hobby was required to provide documentation of rental income that she claimed to be receiving from the property. The mediation agreement also explicitly provided that if Freedom did not receive the requested documentation by March 4, 2013, it was authorized to proceed with the foreclosure.

11

After reviewing Hobby's application and the supporting documentation, Freedom determined that Hobby was not entitled to a loan modification. As a result, the substitute trustees exercised their power of sale and sold the property to Freedom on May 21, 2013. The terms of the mediation agreement unambiguously permitted the substitute trustees to resume their foreclosure if Hobby's application for a loan modification was denied.

Furthermore, Hobby has failed to articulate any argument suggesting that her application for a loan modification would have been evaluated differently had mediation been held prior to the filing of the order to docket, rather than several months afterwards. Indeed, the Final Loss Mitigation Affidavit, filed with the order to docket on July 6, 2012, indicates that Freedom conducted a loss mitigation analysis of Hobby's loan in March of 2012. This analysis led Freedom to conclude that Hobby was not entitled to a loan modification because, at that time, she had been delinquent on her loan for over a year and a modification would have caused a deficit.[8] We, therefore, are not persuaded that Hobby

_____

[8] We note that Hobby's extended history of nonpayment of the loan significantly undermined the viability of Hobby's applications for loan modifications. On April 13, 2009, Hobby obtained the loan from Freedom with an initial principal balance of $469,947. The terms of the loan provided that Hobby was to make monthly payments of principal and interest to Freedom beginning on June 1, 2009. Freedom initiated the foreclosure proceeding by filing the order to docket on July 6, 2012, over 3 years after the loan was made. The statement of debt filed with Freedom's order to docket provides that, as of June 1, 2012, the unpaid principal balance of the loan was $469,432.61 and the accrued unpaid interest of the loan was $75,883.80.

The notice of intent to foreclosure, sent to Hobby on October 29, 2010, indicated that the most recent loan payment Freedom had received from Hobby was dated June 1, 2009.

(continued...)

was at all prejudiced by the fact that she did not actually engage in pre-foreclosure mediation with Freedom.

## II.     The Circuit Court Properly Declined to Vacate the Foreclosure Sale

### A.     Standard of Review

> In reviewing a court's ratification of a foreclosure sale, we disturb the circuit court's findings of fact only when they are clearly erroneous. *Jones v. Rosenberg*, 178 Md.App. 54, 68–69, 940 A.2d 1109 (2008). In reviewing the circuit court's findings of fact, we are mindful that the exceptant to a foreclosure sale bears the burden of proving that the sale was invalid. *J. Ashley Corp. v. Burson*, 131 Md.App. 576, 582, 750 A.2d 618 (2000) (citing *Ten Hills Co. v. Ten Hills Corp.*, 176 Md. 444, 449, 5 A.2d 830 (1939)). The exceptant must also demonstrate that any irregularities caused "actual prejudice." *J. Ashley Corp.*, *supra*, 131 Md.App. at 586, 750 A.2d 618; *see also Harris v. David S. Harris, P.A.*, 310 Md. 310, 319, 529 A.2d 356 (1987) (stating, "In civil cases, it is well established that the burden of demonstrating both error and prejudice is on the complaining party"). We conduct our review on the basis of the evidence introduced into the record, and not on the basis of either the statements of counsel as to what occurred in other cases, *Witt v. Zions*, 194 Md. 186, 189, 70 A.2d 594 (1949), or proffers not accepted by the court as evidence. *Cf. J. Ashley Corp.*, *supra*, 131 Md.App. at 582, 750 A.2d 618.

> We review the court's legal determinations de novo. *Jones*, *supra*, 178 Md.App. at 68–69, 940 A.2d 1109 (citing *Liddy v. Lamone*, 398 Md. 233, 246–47, 919 A.2d 1276 (2007)).

---

[8] (...continued)
This suggests that Hobby only made one, single payment on her loan: the first required monthly payment. We are not aware, from our review of the record, of any evidence that Hobby tendered any further loan payments to Freedom, despite the fact that Hobby continued to reside in the mortgaged property for over 3 years.

*Fagnani v. Fisher*, 190 Md. App. 463, 470-71 (2010) *aff'd*, 418 Md. 371 (2011).

**B.      Denying Hobby's Exceptions Was Not an Abuse of Discretion**

Hobby contends that the circuit court erred in failing to vacate the foreclosure sale of the property in this case.  Hobby's argument, encapsulated in the exceptions she filed regarding the foreclosure sale, focuses on the fact that the court order granting Hobby's motion to stay or dismiss reflects that the order was signed on May 3, 2013.  Hobby reasons that if the court granted her motion to stay or dismiss on May 3, 2013, then the foreclosure case was dismissed as of that date, and the substitute trustees lacked the authority to sell the property at the foreclosure sale held on May 21, 2013.

Hobby's emphasis on the date a court order was signed, however, is misplaced.  Maryland Rule 2-601 provides:

> Upon a verdict of a jury or a decision by the court granting other relief, the court shall promptly review the form of the judgment presented and, if approved, sign it, and the clerk shall forthwith enter the judgment as approved and signed. *A judgment is effective only when so set forth and when entered as provided in section (b) of this Rule.*

Md. Rules 2-601(a)(emphasis added).  Section (b) further provides:

> The clerk shall enter a judgment by making a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court, and shall *record the actual date of the entry. That date shall be the date of the judgment.*

Md. Rules 2-601(b)(emphasis added).  Therefore, a judgment is only effective after it has been signed *and* entered into the record for a particular case.  As noted, *supra*, the court order

14

granting Hobby's motion to stay or dismiss was signed on May 3, 2013, but was not entered into the case record or "docketed" until June 5, 2013. Accordingly, in light of the mandate of Maryland Rule 2-601, the court order granting Hobby's motion to stay or dismiss was not effective until June 5, 2013, after the foreclosure sale had already occurred.

We hold that the circuit court did not abuse its discretion in declining to grant Hobby's exceptions and vacate the foreclosure sale. Because the circuit court did not docket its order granting Hobby's motion to stay or dismiss until after the foreclosure sale had taken place, the case was not stayed or dismissed at the time of the sale. The sale, therefore, was not conducted illegally. In denying Hobby's exceptions to the foreclosure sale, the circuit court explained:

> Although [Hobby] is correct in that the sale occurred after the Order of Dismissal was signed, [the substitute trustee] properly notes that such Order was not entered until after the sale. Furthermore, the Court finds that [Hobby] is not unfairly prejudiced by the timing of the foreclosure sale; rather, [the substitute trustee] and [Freedom] would be unfairly prejudiced if this Court were to grant [Hobby's] motion.

Critically, we note that until a court order is entered into the case record or docketed, the parties to the litigation have no knowledge of it or the date upon which it was signed. It is therefore unreasonable to presume that Freedom could have gained awareness of the order granting Hobby's motion to stay or dismiss through any additional diligence.

15

For the foregoing reasons, we hold that the trial court properly exercised its discretion in declining to vacate the foreclosure sale. We further hold that the circuit court did not abuse its discretion in declining to dismiss the foreclosure action in this case.

> **JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**

16