*Laura H.G. O'Sullivan, et al. v. Joan Kimmett, et al.*, No. 0699, September Term, 2020.
Opinion by Salmon, James P. (Senior Judge, Specially Assigned).


**<u>APPEAL</u>** – An immediate appeal may be taken when a circuit court vacates an enrolled judgment ratifying a foreclosure sale.

**<u>APPEAL</u>** – An immediate appeal <u>is</u> <u>not</u> allowed when a circuit court order vacates an <u>unenrolled</u> order ratifying a foreclosure sale.

**<u>APPEAL – COLLATERAL ORDER DOCTRINE</u>** – The fourth element of the collateral order doctrine (that the issue would be effectively unreviewable if the appeal had to await the entry of a final judgment) cannot be satisfied unless an appellant can prove that he or she has a well established right to avoid trial such as when forcing a party to go through a trial would violate a federal or state right to avoid double jeopardy.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 699

September Term, 2020

_____

LAURA H.G. O'SULLIVAN, ET AL.,

v.

JOAN KIMMETT, ET AL.

_____

Leahy,
Reed,
Salmon, James P.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Salmon, J.

_____

Filed:  September 30, 2021

\* Ripken, Laura S., J., did not participate in the Court's decision to designate this opinion for publication pursuant to Maryland Rule 8-605.1

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

The appellees in this case are Jonathan Kimmett and his wife, Joan Kimmett. They reside at property in Anne Arundel County located at 1160 St. Stephens Church Road, Crownsville, MD ("the Property"). The Property is encumbered by a deed of trust. The appellants are Laura H.G. O'Sullivan and three other substitute trustees named by Ocwen Loan Servicing, LLC ("Ocwen"), the servicer of the Kimmetts' loan, acting as attorney for an entity that claims to be the holder of the deed of trust Note ("the Note"). As will be explained, *infra*, the Kimmetts contend that Ocwen had no authority to appoint the substitute trustees.

The substitute trustees have filed an appeal from an order, dated August 10, 2020, signed by Anne Arundel Circuit Court Judge Robert J. Thompson that: 1) granted appellees' exceptions to the report of sale of the Property; 2) struck an order that had previously ratified the sale of the Property; 3) granted the appellees' motion to strike the deed that conveyed the Property to the foreclosure sale purchaser; 4) struck a motion filed by the foreclosure sale purchaser for possession of the Property; and 5) ordered "a Full Evidentiary Hearing pursuant to Rule 14-211." In this appeal, the substitute trustees raise one issue which they phrase as follows:

> Whether the Circuit Court erred in granting the Appellees' Rule 14-305 post-sale Exceptions and Ordering a Rule 14-211 Hearing where Appellees' Rule 14-305 Exceptions consisted of the same Rule 14-211 pre-sale challenges to [appellants'] standing that the Circuit Court had previously dismissed.

The Kimmetts have filed a motion to dismiss this appeal based on their contention that the August 10, 2020 order is not a final judgment as defined by Md. Rule 2-602 and

none of the exceptions to the rule (that this Court has no jurisdiction to consider a non-final judgment) is applicable.

## I.

### PROCEDURAL BACKGROUND

On April 20, 2007, Jonathan Kimmett took out a $550,000 loan from America Brokers Conduit, the terms of which were included in the Note. Joan Kimmett initialed the Note below her husband's signature, although she was not named in the Note as a borrower. To secure the Note, Mr. and Mrs. Kimmett executed a deed of trust that encumbered the Property. The deed of trust named Andrew Valentine as trustee and Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for the beneficiary of the Note – American Brokers Conduit. Thereafter, according to the substitute trustees, a deed from MERS (solely as nominee for American Brokers Conduit) transferred its beneficial interest in the Note to Deutsche Bank National Trust Company as trustee for American Home Mortgage Asset Trust 2007-4, Mortgage-Backed pass-through Certificate Series 2007-4 ("Deutsche Bank").

Mr. and Mrs. Kimmett defaulted on the loan secured by the deed of trust on May 2, 2009. They subsequently filed for bankruptcy. After a bankruptcy stay was lifted, Ocwen, the loan servicer, executed a "deed of substitution trustee," on September 23, 2016, which appointed Laura H.G. O'Sullivan, Rachel Kiefer, Jana M. Gantt and Chasity Brown as substitute trustees.

On December 28, 2016, the substitute trustees began a foreclosure action against the Property by filing an order to docket in the Circuit Court for Anne Arundel County.

2

Attached to the Order to Docket were documents indicating that Deutsche Bank was (and currently is) the holder of the Note secured by the Property; an affidavit certifying ownership of debt instrument, default and indebtedness; and a deed of substitution of trustee. On that same date, the substitute trustees sent a Notice of Intent to Foreclose to Mr. and Mrs. Kimmett.

The substitute trustees, on June 12, 2017, filed a final loss mitigation affidavit after which the Kimmetts, on July 5, 2017, filed a request for mediation. Foreclosure mediation was held on August 23, 2017, but no agreement was reached.

The Property was advertised for sale with the sale set to take place on November 7, 2018. Two days before the sale, on November 5, 2018, the Kimmetts filed a *pro se* emergency motion to shorten time and to stay foreclosure. The Kimmetts, however, did not ask that the foreclosure action be dismissed. That motion was untimely because Md. Rule 14-211(a)(2)(A)(iii)(a) requires, insofar as is here pertinent, that such a motion be filed, at the latest, within 15 days after the date the "postfile mediation was held." In the subject case, the "postfile" mediation hearing was held more than fourteen months prior to the date that the Kimmetts filed their motion to shorten time and to stay foreclosure. Aside from being late, the motion was not under oath nor was it supported by an affidavit as required by Md. Rule 14-211(a)(3)(A); nor did the Kimmetts provide any excuse for the late filing. The motion to shorten time and to stay foreclosure asserted, *inter alia*, that the loan servicer, Ocwen, had proceeded in the foreclosure action using fraudulent documentation.

3

No stay was entered and the substitute trustees went forward with the sale of the Property on November 7, 2018. The Property was purchased by Deutsche Bank, the only bidder, for $482,000. Thereafter, on November 27, 2018, the circuit court entered an order, which had been signed on November 9, 2018; the order noted that the Kimmetts' Md. Rule 14-211 motion did not comply with Md. Rule 1-204. That last-mentioned Rule requires, *inter alia*, that in order for the court to shorten or extend time, the movant must show that the failure to act in a timely manner was the "result of excusable neglect." Md. Rule 1-204(a).[1] The order docketed on November 27, 2018 also stated that the motion was moot because the sale had already taken place.

On November 26, 2018, one of the substitute trustees filed a report of sale. The clerk of the Circuit Court for Anne Arundel County filed a notice of sale of the Property on December 7, 2018. The notice of sale filed by the clerk included a notice of the deadline for filing exceptions to the ratification of the foreclosure sale. The notice read:

> Notice is hereby issued this **Friday, December 07, 2018** that the sale of the property in the proceedings mentioned, made and reported by **Rachel Kiefer, Esq. Substitute Trustee** BE RATIFIED AND CONFIRMED, unless cause to the contrary thereof be shown on or before the **7th** day of **January 2019**[.]

(Bold emphasis in original.)

---

[1] The motion to shorten time and to stay foreclosure was filed under Md. Rule 14-211; that Rule "contemplated injunctive relief as a remedy" for the denial of the motion and was immediately appealable. *See Fishman v. Murphy*, 433 Md. 534, 540 n.2 (2013). The Kimmetts did not file an appeal from the denial of their Rule 14-211 motion. But that failure to file an immediate appeal did not constitute a waiver of the right to file an appeal once a final order was entered. *In re R.S.*, 242 Md. App. 338, 356 (2019).

4

On January 6, 2019, the Kimmetts filed exceptions to the ratification of the foreclosure sale pursuant to Md. Rule 14-305. The Kimmetts raised three exceptions. The first exception was grounded on the contention that the substitute trustees were not "individuals authorized to make the sale[.]" That assertion was based on the allegations that American Brokers Conduit—the only lender identified on the Note and only beneficiary identified on the deed of trust—ceased to exist as of November 30, 2010 by virtue of liquidation by the U.S. Bankruptcy Court and therefore could not have validly assigned the deed of trust to Deutsche Bank (as the substitute trustees maintained it did) on September 17, 2013. In other words, according to the Kimmetts, the deed of trust assignment to Deutsche Bank was illegitimate and therefore the appointment of the Substitute Trustees by a servicer who was appointed by Deutsche Bank was likewise illegitimate because Deutsche Bank was not the holder of the Note and thus had no authority to appoint a servicer. The Kimmetts' bottom-line argument was that inasmuch as the substitute trustees were not individuals authorized to make the sale, the advertisement for the sale was procedurally defective inasmuch as the advertisement was not published by "the individual[s] authorized to make the sale" as required by Md. Rule 14-210(a).

Based on the same premise, the Kimmetts' second exception was that the advertisement of sale was "defective" because the substitute trustees represented in the advertisement that they had the power to sell even though (allegedly) they did not have such power.

5

A third exception was that the substitute trustees' misrepresentation "chilled" the bidding at the foreclosure sale, which constituted a procedural irregularity.

On January 16, 2019, the substitute trustees filed their response in opposition to the exceptions. They argued that the exceptions were untimely; in the alternative, they argued that Maryland law is clear that challenges to a lender's right to foreclose must be timely raised prior to sale, pursuant to Md. Rule 14-211, and cannot be raised as the basis for post-sale exceptions under Md. Rule 14-305.

Maryland Rule 14-305(d) reads:

> (d) **Exceptions to sale**. (1) How taken. A party, and, in an action to foreclose a lien, the holder of a subordinate interest in the property subject to the lien, may file exceptions to the sale. Exceptions shall be in writing, shall set forth the alleged irregularity with particularity, and shall be filed within 30 days after the date of a notice issued pursuant to section (c) of this Rule or the filing of the report of sale if no notice is issued. Any matter not specifically set forth in the exceptions is waived unless the court finds that justice requires otherwise.

(Emphasis added.)

A hearing on the exceptions was held in the Circuit Court for Anne Arundel County on March 4, 2019, Judge Thompson presiding. Judge Thompson did not rule on the merits of the exceptions; instead, he ruled that the exceptions were not timely filed by the Kimmetts. The judge apparently was under the mistaken impression that exceptions must be filed within 30 days from the date of the report of sale when, in fact, the rule allowed exceptions to be filed within 30 days of the date of the clerk's notice of sale if such a notice was filed. Here, the notice of sale was filed by the clerk on December 7, 2018 and the exceptions were filed on Monday, January 7, 2019.

Judge Thompson's order denying the exceptions was docketed on March 7, 2019. The Kimmetts then filed a motion to alter or amend judgment, which Judge Thompson denied on April 16, 2019.

On May 28, 2019, the circuit court entered a final order ratifying the foreclosure sale of the Property. That order was docketed on May 30, 2019. The Kimmetts filed a timely notice on June 3, 2019, in which they sought in banc review of Judge Thompson's:

> (i) March 4, 2019 Order that denied Defendants' Exceptions to the Ratification of the Foreclosure Sale on the ground that Defendants' Exceptions were not timely filed; and (ii) April 9, 2019 Order denying Defendants' Motion to Alter or Amend the Order Denying Defendants' Exceptions.

Within 30 days of the notice of in banc review, the Kimmetts, pursuant to Md. Rule 2-551(c), filed a memorandum that stated concisely the questions presented. In their memorandum, the questions presented were identical to those set forth in their notice of in banc review. Md. Rule 2-551(c) allows an opposing party, within 15 days of the filing of the memorandum by the party seeking review, to file a memorandum stating "alternative questions presented" or "additional or different facts" if the opponent "wishes to dispute the statement of questions or facts[.]" The substitute trustees filed no such memorandum within the 15 day deadline.[2]

---

[2] The deadline for the substitute trustees filing a memorandum was July 16, 2019. The substitute trustees filed a memorandum on September 27, 2019, in which they asked the in banc panel to answer the following question: Were the exceptions, even if timely filed, nevertheless properly denied on the grounds that the Kimmetts "failed to state a valid ground on which the sale of the Property could be set aside?" Because that alternative question presented was not timely raised, the substitute trustees had no right to have that alternative question answered by the three judges who made up the in banc panel.

7

While the in banc appeal was pending, the substitute trustees recorded in the Land Records of Anne Arundel County, a deed purporting to convey the Property to Deutsche Bank. On August 14, 2019, also while the in banc review was pending, Deutsche Bank, by their own counsel, filed a motion for judgment asking the court to award possession of the Property to it. The Kimmetts, on September 2, 2019, filed a motion to strike the deed recorded by the substitute trustees and also filed an opposition to Deutsche Bank's motion for judgment awarding possession of the Property to it.

On November 20, 2019, the Kimmetts' appeal was heard by three Anne Arundel County circuit court judges. The panel, on January 31, 2020, filed a written opinion, as well as an order, which were docketed on February 6, 2020, reversing Judge Thompson's denial of the exceptions. The reason for the reversal was that the exceptions were, contrary to Judge Thompson's ruling, timely filed. The panel explained in its written opinion that the exceptions were timely because they were filed within 30 days of the date that the notice of sale was filed by the clerk. The in banc panel did not reach the merits of the exceptions, presumably because the substitute trustees had not timely preserved that question for resolution by the in banc panel. The panel remanded the case "to the [t]rial [j]udge for further action on the merits of the Exceptions."

Ten days after that remand was docketed, the Kimmetts, by counsel, filed: 1) a motion to strike the final ratification order, 2) a motion to strike the deed that conveyed the Property to Deutsche Bank; and 3) a motion asking the court to deny Deutsche Bank's motion for possession of the Property.

8

On August 10, 2020, a hearing was held before Judge Thompson concerning all pending motions as well as the Kimmetts' exceptions to the report of sale. At the outset of the hearing, all parties agreed that Judge Thompson should strike the order signed May 28, 2019, and docketed on May 30, 2019, that ratified the sale. The parties agreed that this should be done because a sale cannot be ratified prior to the court ruling on the exceptions to the sale.[3] Accordingly, based on the agreement of counsel, Judge Thompson said, prior to hearing any evidence, that "the May 28, 2019 ratification order, shall be and hereby is

[3] The relevant colloquy concerning the agreement was as follows:

[Counsel for the Kimmetts]: There is that outstanding final ratification order and it shouldn't stand because of the appeal reserved [sic] but in addition, if any party wants to appeal, you have to do it within 30 days of that order and that was from 2019. So it is pragmatically impossible - -

THE COURT: I agree with you on that. The final ratification order must be stricken because here we are still in the middle of this process.

[Counsel for substitute trustees]: Exactly.

[Counsel for the Kimmetts]: I would agree with that, too, Your Honor. That portion of the relief, that was requested, that motion to strike and that ratification order is appropriate.

THE COURT: So assuming without deciding, I am not prejudging anything, but just thinking out loud here, assuming the exceptions were denied today, then it is in the realm of possibility that a new ratification order would be put in place and then your appellate clock would - - on either side, right.

\*       \*       \*

[Counsel for the Kimmetts]: I think that it is already pragmatically practically void.

(Emphasis added.)

9

stricken." In regard to the issue of whether the deed conveying the Property to Deutsche Bank should be struck, counsel for the Kimmetts argued that the requested action should be taken, because Deutsche Bank, the purchaser at sale, at that point, had no right to the Property inasmuch as the order ratifying the sale had been stricken. Counsel for the substitute trustees told the court that if the court "feels the need to . . . strike the deed, [he] won't oppose it." With that concession, Judge Thompson granted the request to strike the deed.

In regard to the motion to strike Deutsche Bank's motion for possession of the Property, the following exchange occurred, prior to the court hearing any evidence:

> THE COURT: So from the Plaintiff's [substitute trustees'] side, how if at all is the Plaintiff prejudiced if I strike the motion? And hypothetically you win today on the exceptions and the exceptions are denied, you can simply just move again for possession, correct?

> [Counsel for substitute trustees]: You are correct, Your Honor. And these three issues are honestly in the scheme of the things, the hardest is the exceptions and there are more minor issues. The prejudice would be the whatever couple hundred dollars we charge for refiling the motion to the secured party. That would be the prejudice. The cost for refiling the motion. Again I believe it can be held in abeyance but if the Court feels a need to strike it again, to me that is not - -

> THE COURT: I think in an abundance of caution, I will strike the motion for possession and we will start new once the exceptions have been ruled on. All right. I think that disposes of all of the preliminary matters. [Counsel for appellees], it is your exceptions. So turn this three ring circus over to you.

At the hearing on the exceptions, Mr. and Mrs. Kimmett were the only witnesses. Mrs. Kimmett testified that she did not endorse the Note but only initialed it. She had no personal knowledge as to any fact relevant to the issue of whether the exceptions should

10

be granted or denied. During her testimony, Mrs. Kimmett was shown documents indicating that the original lender, American Brokers Conduit, was liquidated in 2010. According to Mrs. Kimmett, from the documents shown to her, there was no indication that the original lender had ever transferred its interest in the Note to Deutsche Bank prior to liquidation. She was then shown a document dated September 17, 2013, indicating an assignment by American Brokers Conduit of the deed of trust that encumbered the Property was made to Deutsche Bank. During direct examination, her counsel asked Mrs. Kimmett the following leading question:

> So based on those legal documents that are court ordered, I should say . . . if American Brokers Conduit ceased to exist November 30, 2010, how could American Brokers Conduit transfer the deed of trust to Deutsche Bank in 2013?

> Mrs. Kimmett answered . . . "I don't know."

On cross-examination, it was brought out that Mr. and Mrs. Kimmett had gone through bankruptcy and had signed a consent order, filed in the bankruptcy court, in which they stipulated that Deutsche Bank was a secured party under the deed of trust that encumbered the Property and that Deutsche Bank could proceed with foreclosure.

The consent order allowed the Kimmetts 30 extra days before the bankruptcy stay was lifted. Counsel for the substitute trustees was later to argue at the August 10, 2020 hearing that, having agreed in the bankruptcy court that Deutsche Bank was a secured party, the Kimmetts were estopped from later denying Deutsche Bank's secured status.

Mr. Kimmett also testified, but basically his testimony reiterated the testimony his wife had given.

11

Judge Thompson, after hearing argument of counsel, delivered an oral opinion in which he said, in relevant part:

I believe that the Defendant's burden is by a preponderance on Exceptions to show that there were procedural irregularities. <u>And I agree with the Defendant that simply because you raise something pre-sale does not mean you can't raise it post-sale on the same facts, if you are looking at a different question, which is the procedural irregularity or the urged procedural irregularity</u>.

As it stands now[,] I don't know, as I just said, who the proper Creditor is. All I know is that there was a loan made to the Kimmetts or to Mr. Kimmett and that was made years ago. And then it looks like it was - - payments were made for some period of time and then payments ceased to be made at some point.

I would sleep better at night if - - were the Kimmetts my client I would sleep much better at night if they had been escrowing those payments so that they could be made at some point. But it seems to me that the sloppiness on the side of the [substitute trustees] is met with unwillingness to pay a debt on the side of the Defendant. So, I'm not - - I'm not overly thrilled with either position.

I'm not convinced that the [substitute trustees] had, was the authorized party to make the sale pursuant to the Rule 14-210. I am not convinced because of that finding that it was not a material misrepresentation by the [substitute trustees]. Again, it may just have been sloppiness, that the authority to sell came under the Deed of Trust. That may have been an intentional misrepresentation, it may have been a negligent misrepresentation, it may <u>not have been a misrepresentation at all. I don't know</u>.

And with all due respect to the two fact witnesses that I've heard from today, they offered me a lot of what I'll call hearsay. This is what the order means Judge. And a - - it wasn't of great help to me because the Order, at least usually Orders speak for themsel[ves] and do not rely for interpretation on what fact witnesses may consider.

So, as to the Exceptions themselves, I will grant the Exceptions on one and two. The third Exception I think is moot because the first two have been granted.

12

Accordingly, the Court will set aside the sale and [o]rder a full evidentiary 14-211 [h]earing between the parties in this case.

Now, I will say, [counsel for substitute trustees], what I would want to see from you would be that paint by numbers transaction history because you know it's going to come up again, because your client is going to want to move to sale. Sale has been set aside. So, now they have pre-sale rights again, which I expect them to raise, and I'm not telling you how to do your thing but - -

[Counsel for substitute trustees]: Right - - - witness.

THE COURT: If it can be done, that's the way you are going to have to go.

(Emphasis added.)

Judge Thompson signed an order on August 10, 2020 that read as follows:

Counsel present on behalf of the Plaintiffs. Defendants present with Counsel. Counsel heard. May 28, 2019 Ratification Order is stricken. Court GRANTED Defendant's Motion to Strike the Deed. Plaintiff's Motion for Possession is Stricken. Testimony taken.

Court GRANTED Exceptions.

Court Ordered a Full Evidentiary Hearing pursuant to Rule 14-211.[4] Hearing to be set no sooner than 60 days from 8/10/2020 before any Judge.

---

[4] The reasons that objections to the validity of the lien, or to the validity of the lien instrument must be timely made, pre-sale, are explained in *Devan v. Bomar*, 225 Md. App. 258, 260 (2015). In *Devan*, we said:

> In mortgage foreclosure law, as elsewhere, society's interest in finality and repose is a weighty one. As with statutes of limitations generally, procedural deadlines for raising certain challenges are established and strictly enforced. An unexcused failure to comply with a clear deadline may doom what might otherwise have been a highly meritorious challenge, had it been timely filed. In *Bates v. Cohn*, 417 Md. 309, 329-30 (2010), Judge Harrell pointed out why in foreclosure law a time for closing the books with certainty is an economic necessity or is, at least, economically desirable.

(continued…)

13

Hearing sheet signed as Order of Court.

## II.

## MOTION TO DISMISS APPEAL

As mentioned earlier, the Kimmetts contend that this Court does not have jurisdiction to consider this appeal because no final judgment has been entered in this case and no exception to the rule that an appeal may be taken only from a final judgment is here applicable. The substitute trustees, for several reasons, contend that we do have jurisdiction to decide this appeal. But before considering the merits of each side's arguments, it is useful to set forth some general appellate principles.

---

> "Although we acknowledge that the spectre of foreclosure is as daunting as it is disheartening, *if a borrower was able to raise any sort of exception after the foreclosure sale, there undoubtedly would be a chilling effect on interested prospective purchasers* coming to sales. Prospective third-party purchasers would be unable—based on most practical notions of what constitutes due diligence—to gauge against such claims the risk of an intended investment. Being a bona fide purchaser for value then would not mean as much or even offer the traditional safe harbor underlying that status."

(Emphasis added.)

The italicized part of the just quoted excerpt, arguably at least, would appear to undercut the Kimmetts' argument that the bidding at the foreclosure sale may have been "chilled" because bidders might have refrained from bidding when they discovered (by research) that the lien or lien instrument was invalid. We say this because if the Maryland Judiciary strictly enforced the time requirement set forth in Rule 14-211, a prospective purchaser would not have to worry about the validity of the lien or lien instrument once the deadline for filing a Md. Rule 14-211 motion had passed.

14

## A. General Principles

In *McLaughlin v. Ward*, 240 Md. App. 76, 82-83 (2019), we said:

> Generally, parties may appeal only upon the entry of a final judgment. *See* Md. Code (1974, 2013 Repl. Vol.), § 12-301 of the Courts and Judicial Proceedings Article. One of the necessary elements of a final judgment is that the order must adjudicate or complete the adjudication of all claims against all parties. *See*, *e.g.*, *Waterkeeper Alliance, Inc. v. Maryland Dep't of Agric.*, 439 Md. 262, 278 (2014) (citing *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41 (1989)); *Zilichikhis v. Montgomery County*, 223 Md. App. 158, 171-72 (2015). In other words, the judgment "must leave nothing more to be done in order to effectuate the court's disposition of the matter." *Rohrbeck*[], 318 Md. at 41.

> "[A] ruling must ordinarily have the following three attributes to be a final judgment: (1) it must be intended by the court as an unqualified, final disposition of the matter in controversy[;] (2) unless the court acts pursuant to Maryland Rule 2-602(b) to direct the entry of a final judgment as to less than all of the claims or all of the parties, it must adjudicate or complete the adjudication of all claims against all parties; [and] (3) it must be set forth and recorded in accordance with Rule 2-601." *Metro Maint. Sys. South, Inc. v. Milburn*, 442 Md. 289, 298 (2015) (citing *Rohrbeck*[], 318 Md. at 41); *Maryland Bd. of Physicians v. Geier*, 225 Md. App. 114, 129-30 (2015).

> "This Court has jurisdiction over an appeal when the appeal is taken from a final judgment or is otherwise permitted by law, and a timely notice of appeal was filed." *Doe v. Sovereign Grace Ministries, Inc.*, 217 Md. App. 650, 661 (2014). If we lack appellate jurisdiction, however, we must dismiss an appeal. *See* Md. Rule 8-602(b) (2019); *Zilichikhis*[], 223 Md. App. at 172. "[W]e can raise the issue of finality on our own motion." *Zilichikhis*[], 223 Md. App. at 172.

> In a foreclosure case, a court does not enter a final judgment at least until it has ratified the foreclosure sale. *See Balt. Home Alliance, LLC v. Geesing*, 218 Md. App. 375, 383 n.5 (2014); Md. Rule 14-305(e); *see also Hughes v. Beltway Homes, Inc.*, 276 Md. 382, 384 (1975) (stating that an order ratifying a foreclosure sale is a judgment because it is an order of the court final in its nature). Moreover, if the court refers the matter to an auditor to state an account, as it may under Rule 14-305(f), it may not enter a final judgment until it has adjudicated any exceptions to the auditor's report. *See Balt. Home Alliance, LLC*[], 218 Md. App. at 383 n.5.

There are statutory exceptions to the general rule that appeals may be taken only from final orders. In civil cases, except for orders regarding contempt, those exceptions, ten in number, are set forth in Md. Code (1974, 2020 Repl. Vol.) § 12-303 of the Courts & Judicial Proceedings Article. One of the ten exceptions is set forth in § 12-303(1), which reads:

> (1)  An order entered with regard to the possession of property with which the action is concerned or with reference to the receipt or charging of the income, interest, or dividends therefrom, or the refusal to modify, dissolve, or discharge such an order[.]

As we said in *Flower World of America, Inc. v. Whittington*, 39 Md. App. 187, 192 (1978):

> The common denominator of the [statutory] exceptions is the irreparable harm that may be done to one party if he had to await final judgment before entering an appeal. Reversal of the final order because of the time expenditure involved in trial and appeal might "rust the sharpest sword" and "consume the strongest cord." [(quoting Sir Walter Scott, *Harold the Dauntless*, canto I, st. 4 (1817).]

(Footnote omitted.)

Besides statutory exceptions to the rule against appeals from interlocutory judgments, there is a common law exception known as the collateral order doctrine. In the case of *In re Foley*, 373 Md. 627, 633-34 (2003), Judge Eldridge, speaking for the Court, stressed that the collateral order doctrine should be applicable only in extraordinary circumstances. He wrote:

> The "collateral order doctrine 'treats as final and appealable a limited class of orders which do not terminate the litigation in the trial court.'" *Bunting v. State*, 312 Md. 472, 476 (1988), quoting *Public Service Comm'n v. Patuxent Valley*, 300 Md. 200, 206 (1984). The doctrine is a very limited exception to the principle that only final judgments terminating the case in

16

the trial court are appealable, and it has four requirements. As summarized by Judge Wilner for the Court in *Pittsburgh Corning v. James*, 353 Md. 657, 660-61 (1999),

> "[w]e have made clear, time and again, as has the United States Supreme Court, that the collateral order doctrine is a very narrow exception to the general rule that appellate review ordinarily must await the entry of a final judgment disposing of all claims against all parties. It is applicable to a 'small class' of cases in which the interlocutory order sought to be reviewed (1) conclusively determines the disputed question, (2) resolves an important issue, (3) resolves an issue that is completely separate from the merits of the action, *and* (4) would be effectively unreviewable if the appeal had to await the entry of a final judgment. *See Peat & Co. v. Los Angeles Rams*, 284 Md. 86, 92 (1978); *Clark v. Elza*, 286 Md. 208, 213 (1979); *Shoemaker v. Smith*, 353 Md. 143 (1999)."

*See In re Franklin P.*, 366 Md. 306, 327 (2001), where Judge Cathell for the Court recently emphasized: "The four elements of the test are conjunctive in nature and in order for a prejudgment order to be appealable and to fall within this exception to the ordinary operation of the final judgment requirement, each of the four elements must be met." *See also Jackson v. State*, 358 Md. 259, 266-67 (2000).

Furthermore, in Maryland the four requirements of the collateral order doctrine are very strictly applied, and appeals under the doctrine may be entertained only in extraordinary circumstances. *Pittsburgh Corning v. James, supra*, 353 Md. at 666; *Shoemaker v. Smith, supra*, 353 Md. at 169; *Bunting v. State, supra*, 312 Md. at 482. On numerous occasions recently, we have summarily reversed appellate judgments where appeals were entertained under the collateral order doctrine, and we ordered the dismissal of such appeals. *See, e.g., Housing Authority v. Smalls*, 369 Md. 224 (2002)[.]

Orders striking an enrolled judgment are also immediately appealable. In *First Federated Com. Tr. v. Comm'r.*, 272 Md. 329, 333 (1974), the Court said:

> It is now well settled in this State, that a plaintiff or complainant in a law or equity action, as the case may be, has the right to an immediate appeal from an order striking a judgment or decree which has become enrolled under Maryland Rules 625 (law) or 671 a (equity). *Ventresca v. Weaver Brothers*, 266 Md. 398, 403 (1972); *Mut. Benefit Soc'y v.*

17

*Haywood*, 257 Md. 538, 540 (1970); 2 *Poe, Practice* (Tiffany's ed. 1925) § 391. And, likewise, a defendant may appeal from an order refusing to set aside such an enrolled judgment or decree. *B.J. Linthicum's Sons v. Stack*, 213 Md. 344, 347 (1957); *Associated Transport v. Bonoumo*, 191 Md. 442, 446 (1948); *Eddy v. Summers*, 183 Md. 683, 689 (1944); 2 *Poe Practice, supra*. As the appeal now before us is from the refusal to strike or vacate an enrolled decree, it is permitted and the motion to dismiss must be denied. In so ruling, however, we mention that as an appeal from the denial of a motion to vacate an enrolled judgment is limited in scope it does not serve the normal functions of an appeal from the original judgment.

(Emphasis added.)

## B. Merits of the Motion to Dismiss

## 1. Striking the Order Ratifying the Sale

The substitute trustees, in their reply brief, assert:

The August 10, 2020 order is an appealable order because it vacated a prior final order ratifying the sale of the Property.[5]

In support of that assertion, the substitute trustees argue:

Appellees ignore that the August 10, 2020 order vacated the May 28, 2019 order ratifying the foreclosure sale of the Property and also denied Appellants' motion for possession of the Property, and therefore it is an appealable order. This Court made clear in *Huertas v. Ward*, 248 Md. App. 187 (2020) that "an order ratifying a foreclosure sale is a final judgment as to any rights in the real property" and that "an order ratifying a foreclosure sale is a final judgment with respect to the in rem aspects of a foreclosure proceeding." *Id*. at 205, 206. Further, in *Bank of New York Mellon v. Nagaraj*, 220 Md. App. 698 (2014), this Honorable Court reversed a circuit court's order vacating a prior order ratifying a foreclosure sale. The appeal

---

[5] This argument is odd because it is made even though, in the circuit court, counsel for the substitute trustees conceded that Judge Thompson should strike the order signed on May 28, 2019 (docketed May 30, 2019), that ratified the sale. Having made that concession, even if an appeal from the striking of an unenrolled order of ratification of sale was allowed, the substitute trustees could not succeed on appeal because to succeed, they would have to convince us to reverse a judge for doing an act that they had previously agreed that the judge should do.

18

in *Nagaraj* was taken from the order vacating a prior order ratifying the foreclosure sale of the involved property.  *Id*. at 700 ("Appellant, Bank of New York Mellon, appeals from an order of the Montgomery County vacating a final ratification order of a foreclosure sale. . . ."). *Nagaraj* thus confirms that an order vacating a ratification order is an appealable order. Otherwise, the appeal in *Nagaraj* would have been dismissed for lack of appellate jurisdiction.

Here, Appellants were not aggrieved by the May 28, 2019 order ratifying the sale, and had no reason to appeal from that ruling, which was in their favor.  Instead, Appellants were aggrieved by the August 10, 2020 order that, *inter alia*, vacated the ratification order.  Because the May 28, 2019 ratification order was itself a final appealable order, it logically follows – and *Nagaraj* confirms – that the August 10, 2020 order vacating the May 28, 2019 ratification order is also an appealable order.  Just as it did in *Nagaraj*, this Honorable Court should review whether "the circuit court erred in vacating the ratification of the foreclosure sale." *Nagaraj*, *supra* at 707.  Consequently, Appellees' Motion to Dismiss must be denied.

(Footnotes omitted.)

It is of course true that a final order of ratification of sale is a final appealable order.  That was the reason that it was appropriate for the Kimmetts to note an appeal to the in banc court where they were allowed to argue the merits of any prior interlocutory order (such as the order denying their exceptions to the report of sale) entered prior to the final order.

And, it is also true, that an order of court striking an <u>enrolled</u> judgment is immediately appealable.  That was the situation in *Bank of New York Mellon v. Nagaraj*, 220 Md. App. 698 (2014), upon which the substitute trustees rely.  In *Nagaraj*, the circuit court ratified a foreclosure sale, in November 2010.  *Id.* at 702.  The defendants in the foreclosure case appealed to this Court and, on February 22, 2012, we affirmed the ratification.  *Id*.  After the judgment had been enrolled for well over a year, the

19

defendants filed a motion to vacate the ratification of the sale. *Id*. at 703. The trial judge, in *Nagaraj*, vacated the enrolled order ratifying the foreclosure sale and the Bank of New York Mellon appealed. Neither side raised any objection to the appealability of the order vacating the enrolled judgment, presumably because the court and counsel were aware of the well-settled principles, discussed in *First Federated*, *supra*, that a party has the right to file an immediate appeal from an order striking an enrolled judgment.

The substitute trustees' reliance on *Bank of New York Mellon v Nagaraj* is misplaced because here there has never been an enrolled judgment ratifying the sale. When a judgment ratifying a sale has not been enrolled, it is interlocutory and an immediate appeal is not allowed from an order striking an interlocutory order. *Standish Corp. v. Keane*, 220 Md. 1, 6 (1959) ("Ordinarily, no appeal lies from an order rescinding an order finally ratifying a trustees' sale[,] which has not been enrolled[.]"). *See also*, *Hunting v. Walter*, 33 Md. 60, 61 (1871) (same). For the above reasons, we reject the substitute trustees' argument that an order striking an unenrolled judgment ratifying a foreclosure sale is an appealable judgment.

## 2. **Collateral Order Doctrine**

The substitute trustees argue:

> The August 10, 2020 Order: (1) conclusively determined the disputed question of whether Appellees' post-sale exceptions were cognizable under Rule 14-305 or were untimely and/or precluded by the Circuit Court's dismissal of Appellant's pre-sale challenges under Rule 14-211; (2) resolved, contrary to existing precedent more fully discussed below, the important procedural issue of which issues must be raised pre-sale under Rule 14-211 versus those which can be raised post-sale under Rule 14-305; (3) resolved

20

only the critical procedural issue separately from the merits of the case; and (4) will be effectively unreviewable if an immediate appeal is not allowed because it will force Appellant to defend pre-sale challenges that Appellees either waived or are otherwise precluded from litigating based on the Circuit Court's prior dismissal of Appellees' Rule 14-211 challenges raising the same claims and/or issues.

The August 10, 2020 order <u>did</u> determine an important question. (Element two). As the substitute trustees stress, under Maryland Rule 14-211(a)(3)(B), a movant must, pre-sale:

> state with particularity the factual and legal basis of each defense that the moving party <u>has to the validity of the lien</u> or the lien instrument <u>or to the right of the plaintiff to foreclose in the pending action</u>."

(Emphasis added.)

The Kimmetts never filed a pre-sale motion to dismiss the foreclosure action and their pre-sale motion to stay was not timely. In other words, the Kimmetts never, pre-sale, raised a timely objection to the validity of the lien or the authority of the substitute trustees to sell. The question presented to Judge Thompson was whether, having failed to timely complain, pre-sale, about the validity of the lien or the right of the substitute trustees to make the sale, the defendants could, post-sale, bring up the same issue based on the same facts by asserting that the substitute trustees had "chilled" bidding by filing a misleading advertisement when they represented that the lien was valid and that they had been validly appointed as substitute trustees. As previously mentioned, Judge Thompson ruled that the defendants could make such challenges post-sale.

Although element two has been proven, element three has not. Element three requires proof that the issue presented is "completely separate from the merits of the case."

21

Whether the claimed procedural irregularity can be raised post-sale, goes to the heart of the foreclosure sale process.

The fourth element is perhaps the most difficult element for any litigant to prove. It is never satisfied in any case except in "extraordinary situations." *Nnoli v. Nnoli*, 389 Md. 315, 329 (2005); *County Commissioners for St. Mary's Co. v. Lacer*, 393 Md. 415, 430 (2006). Here, the substitute trustees have failed to prove element four (that the issue would be "effectively unreviewable" if the appeal had to await the entry of a final judgment.). *Peat & Co. v. Los Angeles Rams*, 284 Md. 86, 92 (1978). In this case, after the circuit court, on remand, holds a Rule 14-211 hearing, one of two results will occur. Either: 1) the circuit court will dismiss the foreclosure action; or 2) it will deny relief to the Kimmetts under Rule 14-211, and the substitute trustees can then re-sell the Property; and, assuming there are no procedural irregularities, the sale will then be ratified. If the sale is finally ratified, there will be no need to resolve the important procedural issue. If, on the other hand, the circuit court dismisses the foreclosure action, that would constitute a final order from which the substitute trustees could file an appeal challenging Judge Thompson's ruling as to the important procedural issue.

As noted earlier, the substitute trustees argue that element 4 has been proven because they have a right to avoid trial concerning a claim that the appellees have (purportedly) waived, which will be denied if an immediate appeal is disallowed. We reject that argument as has the Court of Appeals when similar arguments have been advanced. *See Schuele v. Case Handyman*, 412 Md. 555, 574-76 (2010) and cases therein cited.

For those reasons, the collateral order doctrine is inapplicable.

22

### 3. Courts & Judicial Proceedings Article, § 12-303(1)

The substitute trustees argue that this appeal is also allowed under § 12-303(1) of the Courts & Judicial Proceedings Article because Judge Thompson struck Deutsche Bank's motion for possession of the Property. In their opening brief, their entire § 12-303(1) argument is as follows:

> This Honorable Court has appellate jurisdiction because the August 10, 2020 Order denied Deutsche Bank, whose interests are represented by the Substitute Trustees, possession of the Property and thus constitutes an interlocutory order appealable as of right. Cts. & Jud. Proc. II § 12-303(1); *Manigan v. Burson*, 160 Md. App. 114, 118-19 (2004) (citing *G.E. Capital Mortgage Services, Inc. v. Edwards*, 144 Md. App. 449 (2002) (determining writ of possession where foreclosure sale had not yet been ratified)). The legislative intent in enacting Section 12-303(1) was "to permit an appeal of an interlocutory order where a controversy exists over the right to possession of property . . . during the pendency of the litigation." *McCormick Constr. Co., Inc. v. 9690 Deerco Rd. Ltd. P'ship*, 79 Md. App. 177, 181 (1989). The Circuit Court's striking of Appellant's motion for possession effectively denied Appellant possession of the property pending ratification of the sale, and therefore is immediately appealable as of right.

We disagree with the above argument. In *Manigan v. Burson*, 160 Md. App. 114, 118-19 (2004), we stated:

> To be sure, a party may properly appeal from the grant or denial of a writ of possession. *See, e.g.*, *G.E. Capital Mortgage Services, Inc. v. Edwards*, 144 Md. App. 449 (2002) (regarding propriety of grant of writ of possession where foreclosure sale had not yet been ratified). *See generally* Md. Code (1974, 2002 Repl. Vol), § 12-303(1) of the Cts. & Jud. Proc. Art. (stating that even when an order regarding possession is interlocutory a party may file an immediate appeal). The appeal must pertain to the issue of possession, however, and may not be an attempt to relitigate issues that were finally resolved in a prior proceeding.

(Emphasis added.)

The *Manigan* case is distinguishable from the case at bar. Here, counsel for the substitute trustees told Judge Thompson that his clients would not object if the court stayed a ruling on the motion for possession. And, when Judge Thompson asked counsel for the substitute trustees how his clients would be prejudiced if the motion to strike was granted, counsel said that the only prejudice would be the cost of refiling the motion. After that admission, Judge Thompson struck the motion for possession, but he did so without prejudice to the substitute trustees' right to subsequently refile the motion.

It is true that by granting the motion, Judge Thompson "effectively denied [the substitute trustees'] possession of the [P]roperty pending ratification of the sale[.]" But this was something counsel for the substitute trustees agreed to when counsel told the court that his clients would not oppose a stay of the motion. As mentioned earlier, the ten statutory exceptions to the rule that an appeal in civil cases may only be from a final order all have irreparable injury as their common denominator. Under the circumstances of this case, it is far from clear that the striking of the motion for possession, without prejudice, caused irreparable damage.

More important, however, even assuming *arguendo* that section 12-303(1) might in some instances be applicable to an order striking, without prejudice, a motion for possession "[t]he appeal must pertain to the issue of possession[.]" *Id*. at 119. Here, the appeal filed by the substitute trustees clearly did not pertain to the issue of possession. The entire argument section of the substitute trustees' opening brief is devoted to resolving a different issue, namely:

24

Whether the Circuit Court erred in granting the Appellees' Rule 14-305 post-sale Exceptions and Ordering a Rule 14-211 Hearing where Appellees' Rule 14-305 Exceptions consisted of the same Rule 14-211 pre-sale challenges to Appellant's standing that the Circuit Court had previously dismissed.

And, as can be seen by reading the section, quoted *supra*, of the substitute trustees' opening brief insofar as it concerns § 12-303(1), not once do the appellants affirmatively argue that the court erred in striking the motion for possession without prejudice. They simply argue that the court's actions in striking, without prejudice, Deutsche Bank's motion was an appealable order.[6]

---

[6] In their reply brief, the substitute trustees do set forth an argument as to why the court erred. But, as stated in *Oak Crest Village, Inc. v. Murphy*, 379 Md. 229 (2004), arguments such as that should not be considered.

> An appellant is required to articulate and adequately argue all issues the appellant desires the appellate court to consider in the appellant's initial brief. It is impermissible to hold back the main force of an argument to a reply brief and thereby diminish the opportunity of the appellee to respond to it. We have echoed similar sentiments. *See Fearnow v. C& P Telephone*, 342 Md. 363, 384 (1996); *Warsame v. State*, 338 Md. 513, 517 n.4 (1995).

*Id*. at 241-42.

But even if we were to ignore the rule set forth in *Oakcrest Village Inc.*, *supra*, the substitute trustees would not benefit. In their reply brief, the substitute trustees explain why Judge Thompson erred in striking Deutsche Bank's motion for possession as follows:

> Appellants have properly framed their issues for review in terms of the substance of the Circuit Court's reversible error (*i.e.*, permitting Appellees to re-package as Md. Rule 14-305 post-sale exceptions a challenge to standing that can only be brought pre-sale in a Md. Rule 14-211 motion to stay the sale and dismiss the foreclosure), rather than in terms of the consequences that flow from the Circuit Court's error of law (*i.e.*, the Circuit Court should not have vacated the ratification order or refused to grant

(continued…)

25

Further proof that this appeal does not "pertain" to the issue of whether the trial court erred in striking the motion for possession arises from the fact that the substitute trustees do not mention it as a question presented in their brief. If the appeal did pertain to the striking of Deutsche Bank's motion for possession, the failure to list that question in the questions presented part of their brief would have constituted a waiver of the issue. In *Green v. N. Arundel Hospital*, 126 Md. App. 394, 426 (1999), we said, citing Md. Rule 8-504(a)(3), "Appellants can waive issues for appellate review by failing to mention them in their 'Questions Presented' section of their brief." In *Green*, we reasoned that "[c]onfining litigants to the issues set forth in the 'Questions Presented' segment of their brief ensures that the issues presented are obvious to all parties and the Court. 126 Md. App. at 426 (citing *DiPino v. Davis*, 354 Md. 18, 56 (1999)).

---

possession of the Property to Deutsche Bank). After this Honorable Court concludes that Appellees' post-sale exceptions were actually an impermissible attempt to raise a challenge to standing that Appellees failed to raise prior to sale, it necessary follows that the order vacating ratification must be reversed, and that possession of the Property must be awarded to Deutsche Bank.

The unstated premise of the aforementioned argument is that this Court has jurisdiction to consider whether a judge erred in granting exceptions to a foreclosure sale. That premise, of course, is invalid because, as explained, *supra*, we do not have jurisdiction to decide that issue. Because we do not have jurisdiction to decide that issue, it does not, as the substitute trustees contend, "follow[ ] that the order vacating ratification must be reversed, and that possession of the Property must be awarded to Deutsche Bank."

26

## CONCLUSION

This appeal does not pertain to an order concerning the possession of property. Therefore, the exception to the rule prohibiting interlocutory appeals set forth in § 12-303(1) of the Courts & Judicial Proceedings Article is inapplicable. Moreover, no other exception to the final judgment rule would allow us to entertain this appeal. We shall therefore grant the Kimmetts' motion to dismiss this appeal.

**APPELLEES' MOTION TO DISMISS APPEAL GRANTED; COSTS TO BE PAID BY APPELLANTS**.